# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00468-CV

**KEM Texas, Ltd., Appellant**

**v.**

**Texas Department of Transportation and Armando Saenz,
In his official capacity as Executive Director, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-08-000839, HONORABLE GUS J. STRAUSS JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After the Texas Department of Transportation denied its application for an outdoor advertising sign permit, KEM Texas, Ltd., brought a declaratory-judgment action against the agency and its executive director, in his official capacity, attempting to challenge the agency's actions. Appellees filed a plea to the jurisdiction based on sovereign immunity. The district court granted the plea and dismissed KEM's suit for want of subject-matter jurisdiction. KEM appeals. We will affirm the district court's judgment of dismissal.

## STANDARD AND SCOPE OF REVIEW

An assertion that sovereign immunity from suit deprives a trial court of subject-matter jurisdiction over a claim may be raised through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*,

34 S.W.3d 547, 554 (Tex. 2000). The determination of whether the trial court has subject-matter jurisdiction begins with the pleadings. *See Miranda*, 133 S.W.3d at 226. The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the pleader has met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.* We also assume the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *Id.* at 227 (citing *Bland*, 34 S.W.3d at 555). Where such a challenge implicates the merits of the pleader's claims, the court view the evidence as in a traditional summary judgment motion. *Id.* at 227-28. In resolving the jurisdictional challenges presented by the plea, we may also consider evidence that the pleader has attached to its petition or submitted in opposition to the plea. *See Bland*, 34 S.W.3d at 555.

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

## THE RECORD

Our record consists of KEM's original petition; an affidavit from the president of KEM's general partner, Paul Covey; an August 22, 2006, letter to KEM from Weldon Swanger of

2

TxDOT's Brownwood District office; and a November 17, 2006, letter to KEM from TxDOT's executive director.

In its petition, KEM alleged that it filed an application for an outdoor advertising sign permit with TxDOT in July 2006. KEM's evidence further indicates that the location it proposed for the sign was in Ranger, Eastland County, along Interstate 20, located 660 feet west of FM 2461. In his affidavit, Covey averred that KEM, before filing its permit application, had acquired a perpetual easement "for the construction, operation, repair and maintenance of a billboard" encompassing the proposed location. According to Covey, KEM "cannot use the easement for any purpose other than a billboard."

KEM pled that "[t]he application was improperly denied in August 2006." Swanger's August 26, 2006, letter states that KEM's application for a sign at the proposed location "has been denied" and that "[t]he reason for the denial is the location is in an area within less than 1000 ft. from an interchange, intersection at grade and within 1000 feet of ramps or their acceleration and deceleration lanes along an interstate highway creating a safety issue." In its petition, KEM complains that "[t]he Department apparently determined that the application of 43 Tex. Admin. Code § 21.153(c)(2) required that it deny the permit" but "[t]hat provision . . . does not apply to a location within a city's limits." *See* 43 Tex. Admin. Code § 21.153(c)(2) (2009) (requiring that "signs that will be erected outside incorporated municipalities along a freeway or interstate regulated highway" cannot be erected "(1) in areas adjacent to or within 1,000 feet of interchanges, intersections at grade, or rest areas; or (2) in areas adjacent to or within 1,000 feet of ramps or their acceleration and

3

deceleration lanes."). KEM further alleged that "[t]he department held no hearing in connection with the denial of the permit."

KEM further pled that it appealed the decision to TxDOT's executive director. *See* 43 Tex. Admin. Code § 21.162 (2009) ("An applicant may file a petition with the executive director to appeal a denied permit," and the application must include "a statement of facts as to why the denial is believed to be in error" and supporting documentation). The executive director, according to KEM, "agreed that 43 Tex. Admin. Code § 21.153(c)(2) did not apply" but "determined that, because safety concerns had been raised, the permit could be denied under a different section, 43 Tex. Admin. Code § 21.153(a)(3)." The November 17, 2006, letter from TxDOT's executive director stated the following:

> A review of the documentation associated with the application indicates that the permit was denied because "the location is an area within less than 1000 feet from an interchange, intersection at grade and within 1000 feet of ramps or their acceleration and deceleration lanes along an interstate highway creating a safety issue." The District determined that the proposed location is adjacent to the highway off-ramp. You pointed out in your petition to appeal the denial that the sign location has previously been annexed into the City. Although you are correct that 43 Tex. Admin. Code § 21.153(c)(2) does not apply; the District did determine that a safety issue exists due to the location of the ramp to I-20, and therefore, the permit can be denied under 43 Tex. Admin. Code § 21.153(a)(3), which states that "signs may not be located in a manner that creates a safety hazard, including . . . obstructing or interfering with the driver's view of approaching, merging or intersecti[ng] traffic."
>
> A sign placed in such a location could cause a driver to be unduly distracted while exiting the freeway or yielding to traffic, thus creating a safety hazard. Under these circumstances, the District's [illegible word] is not unreasonable. Therefore, your appeal is denied and the decision of the District is upheld.

4

*See id.* § 21.162(c) (requiring executive director or designee to "make a final determination" of the appeal and "send a written decision to the applicant stating the reason for the denial"). KEM additionally pled that "[t]he director held no hearing in connection with affirming the denial of the permit" and "there exists no evidence of any safety hazard."

KEM further alleged:

5.1   In denying the permit requested by KEM, the Texas Department of Transportation and its director have misapplied the law and have acted arbitrarily and capriciously. There exists no safety issue created by the proposed billboard, and no evidence of such safety issues exists.

5.2   The defendants acted without lawful authority in denying the permit at issue in that the cited statutory provisions are not applicable to the situation at issue. There is no rational connection between the defendants' decision and any facts supported by evidence.

5.3   The application of the cited provision of the Texas Administrative Code interferes with and impair the legal rights and privileges of KEM. KEM has a real property interest in the land for which it has applied for a permit and is now unable to use the property.

5.4   The court should construe the above-cited provisions of the Texas Administrative Code and related provisions and determine that such provisions are inapplicable to the situation at issue and that the permit requested by KEM was improperly denied.

Based on the preceding, KEM requested a declaratory judgment "constru[ing] the provisions of 43 Tex. Admin. Code § 21.153 and the application of such provision to the permit at issue, and declar[ing] the rights of the parties to the suit and KEM's entitlement to the permit at issue."

5

**ANALYSIS**

In a single issue on appeal, KEM argues that the district court erred in dismissing its suit because its pleadings affirmatively demonstrate the district court's jurisdiction over the cause. KEM characterizes its claims as seeking declarations of its rights against the State and/or to compel TxDOT's executive director to act within his statutory or constitutional authority. It relies on the line of cases holding that certain suits under the Uniform Declaratory Judgments Act[1] seeking relief against state officials who allegedly act outside their legal authority—"ultra vires" suits—are not suits "against the State" and do not implicate sovereign immunity. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) ("Private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority. But such suits are not 'suits against the State.' This is because suits to compel state officers to act within their official capacity do not attempt to subject the State to liability. Therefore, certain declaratory-judgment actions against state officials do not implicate the sovereign-immunity doctrine.") (citations omitted); *Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997) ("an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars").

---

[1] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). The UDJA authorizes:

> [a] person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, . . . [or] contract . . . [to] . . . have determined any question of construction or validity arising under the instrument, statute, . . . [or] contract . . . and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* § 37.004(a).

Relatedly, KEM claims it is seeking construction of TxDOT's statutory authority. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994) (suggesting that UDJA waives sovereign immunity as to suit seeking to construe State legislative enactment); *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 114 (Tex. App.—Austin 2007, no pet.) ("As this Court has repeatedly recognized, a justiciable controversy regarding whether a state agency or officer has acted beyond statutory authority provides a jurisdictional basis for a UDJA action seeking construction of that statutory authority.").

The dispositive factor in these cases, in KEM's view, is that the plaintiffs were not seeking money damages against the State, but only declaratory relief. Thus, KEM has repeatedly emphasized that it is not suing TxDOT or its executive director for monetary relief, but only declarations regarding its rights against TxDOT and to construe the agency's authority. However, as appellees correctly observe, this is not the end of the inquiry in determining whether sovereign immunity bars KEM's claims. The UDJA is not a general waiver of sovereign immunity; it "does not enlarge a trial court's jurisdiction, and litigant's request for declaratory relief does not alter a suit's underlying nature." *City of El Paso v. Heinrich*, No. 06-0778, ___ S.W. 3d ___ , 2009 Tex. LEXIS 253, at *6 (Tex. May 1, 2009). Consequently, sovereign immunity will bar an otherwise proper UDJA claim having the effect of establishing a right to relief against the State for which sovereign immunity has not been waived. *See City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) ("private parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim" and "if the sole purpose of such a declaration [regarding a governmental body's statutory

7

authority] is to obtain a money judgment, immunity is not waived") (quoting *IT-Davy*, 74 S.W.3d at 856); *Koch v. Texas Gen. Land Office*, 273 S.W.3d 451, 455 (Tex. App.—Austin 2008, pet. filed) (citing, as examples, UDJA claims that would establish the State's contractual or tort liability). In the case of an ostensible ultra vires claim under the UDJA, as the Texas Supreme Court recently explained, the plaintiff "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, No. 06-0778, ___ S.W.3d at ___ , 2009 Tex. LEXIS, at *11. If the plaintiff, in fact, alleges or ultimately can prove only acts within the officer's legal authority and discretion, the claim seeks "to control state action," and is barred by sovereign immunity. *See id.* Appellees have challenged only whether KEM's pleadings allege acts outside their legal authority. We evaluate this issue by construing the relevant statutory or constitutional provisions defining appellees' authority and determine whether KEM has alleged acts outside that authority. *See Director of Dep't of Agric. & Environ. v. Printing Indus. Ass'n*, 600 S.W.2d 264, 265-70 (Tex. 1980).

In the Texas Highway Beautification Act, codified in chapter 391 of the transportation code, the legislature has declared that "it is necessary to regulate the erection and maintenance of outdoor advertising," such as billboards, "in areas adjacent to the interstate and primary [roadway] system to: (1) promote the health, safety, welfare, morals, convenience, and enjoyment of the traveling public; and (2) protect the public investment in the interstate and primary systems." Tex. Transp. Code Ann. § 391.001(10) (West Supp. 2008), § 391.002(b) (West 2007). To that end, it has prohibited outdoor advertising within specified distances of interstate and primary roadways,

8

subject to certain exceptions, *see id.* § 391.031 (West Supp. 2008), and delegated authority to TxDOT to regulate permissible outdoor advertising in those areas. *See id.* § 391.036 (West 2007) ("The commission's responsibility for the regulation of outdoor advertising is only on a federal-aid primary highway, interstate highway, state highway, or farm-to-market road"); *see also id.* § 391.065(a) (West 2007) (authorizing TxDOT to adopt rules to implement section 391.036). Chapter 391 generally restricts outdoor advertising to areas zoned for commercial or industrial use or unzoned commercial or industrial areas, *see id.* § 391.031(b)(4), (c), and TxDOT is specifically authorized to regulate by rule "the orderly and effective display of outdoor advertising consistent with the customary use of outdoor advertising in this state" in such areas. *Id.* § 391.032 (West 2007). Chapter 391, furthermore, prohibits persons from erecting or maintaining outdoor advertising in regulated areas without first obtaining both a license and a permit from TxDOT. *See id.* §§ 391.061, .067 (West 2007); *see also id.* §§ 391.062-.064 (requirements for obtaining license), .066 (authorization to revoke or suspend licenses or place licensees on probation), .068 (requirements for obtaining permit). The legislature has delegated TxDOT rulemaking power to implement these provisions. *See id.* § 391.065 (West 2007), § 391.068(b) (West Supp. 2008). The rules that TxDOT has adopted pursuant to the foregoing delegations appear in chapter 21, subchapter I, of title 43, Texas Administrative Code. *See* 43 Tex. Admin. Code §§ 21.141-.163 (2009).

KEM's allegations center on TxDOT's refusal to grant its application for an outdoor advertising permit. Section 391.068 of the transportation code provides that, with an exception not applicable here, TxDOT "shall issue a permit to a person with a license issued under this

9

subchapter" if (1) the person's license application complies with TxDOT's rules governing license applications; and (2) the "outdoor advertising . . . if erected would comply with this chapter" and TxDOT's rules regulating outdoor advertising. Tex. Transp. Code Ann. § 391.068(a). The legislature's use of "*shall* issue a permit . . ." denotes a mandatory, non-discretionary duty.[2] However, the legislature made the existence of this duty contingent on the two conditions that (1) the license application complies with TxDOT's rules, and (2) the outdoor advertising would comply with chapter 391 and TxDOT's rules. Whether these conditions exist are left to TxDOT to determine, pursuant to the procedural and substantive requirements of its rules.

Significantly, as KEM acknowledges, the legislature did not provide parties seeking outdoor advertising permits a right to judicial review of these determinations or of TxDOT's ultimate final order denying such permits. *See id*. § 391.068; *cf. id*. § 391.066 (West 2007) (providing right of judicial review from TxDOT's decision to revoke outdoor advertising license). "It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right." *Continental Cas. Ins. Co. v. Functional Restoration Assoc.*, 19 S.W.3d 393, 397 (Tex. 2000) (citing *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967)). Relatedly, absent a statutory right to judicial review of TxDOT's order, a suit challenging the specific order is one to "control state action" and is barred by sovereign immunity, *see Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198

---

[2] Tex. Gov't Code Ann. § 311.016(2) (West 2005); *Frank v. Liberty Ins. Corp.*, 255 S.W.3d 314, 324 (Tex. App.—Austin 2008, pet. denied).

(Tex. 2004); *Scott v. Presidio I.S.D.*, 266 S.W.3d 531, 534 (Tex. App.—Austin 2008, pet. filed) (op. on reh'g); *Southwest Airlines Co. v. Tex. High-Speed Rail Auth.*, 867 S.W.2d 154, 157 (Tex. App.—Austin 1993, no writ) (op. on reh'g), unless the agency acted ultra vires of its statutory authority or violated the constitution in issuing it. *See Texas Hwy. Comm'n v. Tex. Ass'n of Steel Importers*, 372 S.W.2d 525, 530 (Tex. 1963); *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 735 S.W.2d 663, 668 (Tex. App.—Austin 1987, no writ).[3]

Liberally construing KEM's pleadings, KEM alleges basically four factual theories on which it bases its claims for declarations concerning the "rights of the parties to the suit": (1) there is no evidence to support appellees' decision to deny its outdoor advertising sign permit on the basis that the proposed location creates a "safety hazard"; (2) TxDOT's executive director denied KEM's administrative appeal of the permit denial based on a different rule than the one on which the agency staff had initially relied when denying it; (3) KEM was not afforded a "hearing" at either stage of the agency process; and (4) appellees' actions have prevented KEM from using its billboard easement. KEM's first theory complains only of actions within appellees' statutory authority—specifically, the merits of their determination that KEM's proposed billboard would not comply with TxDOT's rules regulating outdoor advertising. *See* Tex. Transp. Code Ann. § 391.068(a); 43 Tex. Admin. Code § 21.153(a)(3). KEM complains only that appellees incorrectly determined that its proposed billboard site failed to comply with TxDOT's rules, not that appellees

---

[3] *But cf. Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 517-20 (Tex. App.—Austin 2003, pet. denied) (distinguishing between APA appeal of "a particular Commission order" and UDJA claim for "a determination of the Commission's general authority" that would resolve larger underlying controversy regarding its authority reflected in other agency proceedings).

11

lacked statutory authority to make that determination. *See North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 459 (Tex. App.—Austin 1992, writ denied) ("The fact that the [agency] might decide 'wrongly' in the eyes of an opposing party does not vitiate the agency's jurisdiction to make an initial decision."). KEM's second and third theories also do not allege acts beyond appellees' statutory authority. The legislature did not prescribe any particular procedure through which TxDOT is to make the determinations required by section 391.068 of the transportation code. Nor does KEM's fourth theory, concerning the alleged impact of appellees' actions on KEM's billboard easement, allege actions beyond appellees' statutory authority.

KEM ultimately relies on the contention that it has pled an infringement of a vested property right without due process.[4] As noted, district courts have subject-matter jurisdiction to review an administrative order that adversely affects a vested property right or otherwise violates a constitutional right. *See Continental Cas. Ins.*, 19 S.W.3d at 397. Sovereign immunity does not bar a suit under this "inherent right of judicial review." *See Southwest Airlines Co.*, 867 S.W.2d at 157 & n.4.

Our first inquiry in a procedural due process claim is whether the plaintiff has been deprived of a property or liberty interest deserving protection under the federal or state constitutions. If a plaintiff fails to allege the deprivation of such an interest, the plaintiff has failed to state a due process claim. *See Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 560-61 (Tex. 1985); *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 248-49 (Tex. App.—Fort Worth 2007, pet. denied). Although conceding that it does not have a vested property right in a billboard

---

[4] KEM clarified during oral argument that it is not attempting to assert a takings claim.

12

*permit*, KEM insists that it has a vested property right in its billboard *easement*. Because this easement permits it to use the property solely "for the construction, operation, repair and maintenance of a billboard," KEM complains, appellees' refusal to grant it a billboard permit has completely destroyed the value of this "constitutionally protected real property interest" without affording it a "hearing" or "any type of due process."

Since the 1972 enactment of the Texas Highway Beautification Act,[5] the right to erect or maintain outdoor advertising at the location KEM proposes has been expressly made contingent upon its obtaining advertising licenses and permits under the Act. KEM has not alleged that it purchased its billboard easement prior to the Act's effective date. Consequently, we need go no further than to hold that KEM's rights under its billboard easement are not vested rights implicating due process, but are merely expectations of a potential and contingent interest. *See Best & Co. v. Texas State Bd. of Plumbing Exam'rs*, 927 S.W.2d 306, 309 (Tex. App.—Austin 1996, writ denied).

We conclude that KEM has not pled allegations that affirmatively demonstrate the district court's subject-matter jurisdiction to hear its suit. Nor has KEM suggested any way it could cure these jurisdictional defects through repleading, and we are not aware of any. *See Texas A&M*

---

[5] Act of March 30, 1972, 62d Leg., 2d C.S., ch.1, 1972 Tex. Gen. Laws 15, 15.

13

*Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-40 (Tex. 2007).[6] Accordingly, we hold that the district court did not err in granting appellees' plea to the jurisdiction, and overrule KEM's issue.

## CONCLUSION

Having overruled KEM's sole issue on appeal, we affirm the district court's judgment of dismissal.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   June 26, 2009

---

[6] To the extent KEM's allegations regarding TxDOT's application of its rules in denying its permit could sound under section 2001.038 of the Administrative Procedures Act, *see* Tex. Gov't Code A nn. § 2001.038 (West 2008), the justiciable controversy that could support such a claim was rendered moot by TxDOT's final, unappealable order. *See Friends of Canyon Lake v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528-29 (Tex. App.—Austin 2002, no pet.).

14