# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00108-CV

**Judith Elaine Carroll Koch, Independent Executrix of the Estate of
Mary Margaret Robinson Booth a/k/a Molly Booth, Appellant**

**v.**

**Texas General Land Office, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. D-1-GN-04-003966, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

This is an appeal from a district court order granting a plea to the jurisdiction based on sovereign immunity. The case concerns a piece of real property. Appellant Judith Elaine Carroll Koch is the surface owner of the property, and appellee Texas General Land Office (GLO) owns the mineral estate. The GLO removed limestone from the property without providing compensation to Koch under the claim that the limestone was a part of the mineral estate. Koch sought a declaratory judgment that the mineral estate does not include the limestone, and that the GLO's removal of the limestone was a taking in violation of the United States and Texas constitutions. The GLO filed a plea to the jurisdiction based on sovereign immunity from suit. The district court granted the plea and dismissed the suit. We affirm the judgment of the district court as to Koch's requested declaratory relief concerning the title ownership of the limestone. We reverse the judgment of the district court as to Koch's takings claim and remand for further proceedings.

***Factual and Procedural Background***

Judith Elaine Carroll Koch is the successor-in-interest to a 641.1-acre parcel of land in Hudspeth County granted by the State to "Jos. J. Knox" in 1926.[1] The patent under which the land was granted states, "All of the minerals in the above described land are reserved to the State." According to Koch's pleadings, the GLO removed a portion of the limestone from Koch's land (leaving a large hole in the ground and a large stack of dirt and caliche) and obtained over $200,000 by its sale to a third party. The GLO asserted ownership of the limestone on the basis that the limestone constituted a portion of the minerals in the land.

Koch filed suit against the GLO on December 6, 2004, seeking (1) declaratory relief that the term "minerals," as contemplated by the patent and applicable statutes at the time of the conveyance, does not include "dirt, soil, sand, gravel, caliche, and limestone" and, therefore, that title to such materials remains with the surface estate, and (2) declaratory relief that the GLO's removal of any such materials was an unconstitutional taking and that any monies obtained by the State for the removed limestone be returned to Koch.[2] The GLO answered and filed a plea to the jurisdiction

---

[1] This lawsuit was originally filed by Mary Margaret Booth, acting both as the owner of a three-fourths undivided interest in the subject land and on behalf of her mother Mary Virginia Booth, who owned the remaining one-fourth undivided interest. While the lawsuit was pending in district court, Mary Margaret Booth died, and Koch continued the lawsuit as independent executrix of Mary Margaret Booth's estate. Also during that time period, Mary Virginia Booth granted her one-fourth interest to Koch, her granddaughter.

[2] Koch also sought a declaration that the GLO's removal of any disputed materials, including limestone, violated the due process provision of the United States Constitution as well as the prohibition against retroactive laws in the Texas Constitution. However, Koch has not adequately briefed these issues and, therefore, has waived the issues. *See* Tex. R. App. P. 38.1(h); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

asserting that it possessed sovereign immunity from suit as to all of Koch's claims. The district court granted the plea to the jurisdiction on December 22, 2006. Koch appeals.

***Standard of Review***

Sovereign immunity from suit deprives a trial court of subject-matter jurisdiction for lawsuits in which the State or a state agency has been sued, unless the State consents to suit. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Whether a court has subject-matter jurisdiction and whether a plaintiff has affirmatively demonstrated subject-matter jurisdiction are questions of law that we review de novo. *Id.* at 226. In deciding a plea to the jurisdiction, we may not weigh the merits of the plaintiff's claims, but must consider only the plaintiff's pleadings, construed in the plaintiff's favor, and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If the pleadings affirmatively negate the existence of jurisdiction, dismissal is proper. *See id.* If the plaintiff's pleadings do not establish jurisdiction, but do not affirmatively demonstrate incurable jurisdictional defects, the proper remedy is to allow the plaintiff an opportunity to amend. *See id.*

***Claims for Declaratory Relief Regarding Title***

Koch seeks declaratory relief that the term "minerals," as contemplated under the original patent and the applicable statutes, does not include limestone or the other

3

disputed materials.[3]  Koch also contends that sovereign immunity does not bar her claims for declaratory relief.

The Uniform Declaratory Judgments Act (UDJA)[4] can generally be used to clarify a person's legal rights in relation to the State.  *See, e.g.*, *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 716-18 (Tex. App.—Austin 2007, no pet.) (sovereign immunity does not bar declaratory judgment action alleging that state agency's refusal to disenroll certain Medicaid and CHIP beneficiaries violated federal and state law).  This is because private parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority.  *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).  Suits to compel state officers to act within their official capacity do not attempt to subject the State to liability, and are not suits against the State.  *Id.*

---

[3] Koch's pleadings seek three separate declarations that essentially seek to arrive at the same result:

1.  A declaration that under the subject patent and the Texas Relinquishment Act in effect at the time of the State of Texas' original patent conveyance of the land in question to the Plaintiff's ancestors, the term "minerals," as contemplated under said Act and patent, did not authorize the State to take or assume title to the dirt, soil, sand, gravel, caliche, and limestone which are part of the land in question;

2.  A declaration that the dirt, soil, sand, gravel, caliche, and limestone, which are part of the land in question, do not come within the scope of [the] term "minerals," as contemplated under the subject Act and patent; [and]

3.  A declaration that under the original Relinquishment Act patent land conveyance to the Plaintiff's ancestors, title to the dirt, soil, sand, gravel, caliche, and limestone, which are part of said land, remained with the Plaintiff's ancestors and ultimately the Plaintiff and her Grandmother, and was not reserved by the Defendant or the State of Texas[.]

[4] Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

However, a party's request for declaratory relief cannot change the basic character of a lawsuit. *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994). A party cannot, therefore, circumvent the bar of sovereign immunity by simply characterizing the suit as a declaratory judgment action when sovereign immunity has not been waived for the relief actually sought. *See Newman v. Kock*, No. 04-07-00858-CV, 2008 Tex. App. LEXIS 5923, at \*6 (Tex. App.—San Antonio Aug. 6, 2008, no pet.). For example, sovereign immunity bars a breach of contract claim, *see General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001), and "private parties cannot circumvent the State's sovereign immunity from suit by characterizing . . . a contract dispute, as a declaratory-judgment claim," *IT-Davy*, 74 S.W.3d at 856. Similarly, the Texas Tort Claims Act governs when immunity is waived for a plaintiff's tort claims, *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a) (West 2005), and a plaintiff cannot circumvent a state official's immunity from suit by recasting a defamation claim as a claim for declaratory relief, *see De Miño v. Sheridan*, 176 S.W.3d 359, 367-68 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

A trespass-to-try-title action is the proper method to adjudicate rival claims of title to real property. *See* Tex. Prop. Code Ann. § 22.001 (West 2000); *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004); *Ely v. Briley*, 959 S.W.2d 723, 727 (Tex. App.—Austin 1998, no pet.). Sovereign immunity bars a "suit for land" against the State or its agency. *State v. Lain*, 349 S.W.2d 579, 582 (Tex. 1961); *Texas Parks & Wildlife Dep't v. Callaway*, 971 S.W.2d 145, 152 (Tex. App.—Austin 1998, no pet.). A "suit for land" necessarily includes a trespass to try title claim. *See Callaway*, 971 S.W.2d at 152. It follows, then, that if a claim for declaratory relief against a

5

state agency is, in effect, an attempt to establish title, sovereign immunity bars the claim absent legislative consent.[5]

Koch asserts that her lawsuit is not an attempt to establish title because she does not dispute the State's title to the mineral estate; rather, she seeks a declaration of what that mineral estate includes. The Texas Supreme Court rejected a similar argument in *Martin v. Amerman*. That case involved a boundary dispute between two residential property owners, and the plaintiffs argued that a declaratory judgment action was proper because the suit would not determine substantive title rights but would merely declare the boundary's location. *See Martin*, 133 S.W.3d at 266. The supreme court disagreed, observing that "[a] boundary determination necessarily involves the question of title, else the parties would gain nothing by the judgment." *Id.* at 267. The same is true here. While both parties agree that the State owns the mineral estate, Koch seeks declaratory relief that will establish what is and is not within that mineral estate. This is conceptually no different from establishing a property boundary line. As in *Martin*, Koch "would gain nothing by the judgment" if it did not effectively grant Koch title to the disputed materials. Koch's claims against the GLO seeking a declaration that the State's mineral estate does not include the disputed materials constitute a suit for land. Therefore, sovereign immunity bars those claims absent legislative consent to prosecute them.

---

[5] The GLO cites to *Brainard v. State*, 12 S.W.3d 6, 12 (Tex. 1999), for an example of the legislature authorizing a suit by landowners against the State to adjudicate title.

Koch's characterization of her causes of action as merely construing the patent or the applicable statutes—the Texas Relinquishment Act[6]—does not change the analysis. Koch is correct that the UDJA generally permits a person who is interested in a deed, or whose rights, status, or other legal relations are affected by a statute, to have determined any question of construction or validity arising under the instrument or statute and obtain a declaration of rights, status, or other legal relations thereunder. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008). However, the UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). The UDJA does not extend a court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature. *IT-Davy*, 74 S.W.3d at 855.

Koch's claims under the UDJA are, in reality, claims to determine title to the limestone on her property. Consequently, "the action brought is considered a trespass-to-try-title suit and is not an action for declaratory judgment." *Aguillera v. Kenedy Mem'l Found.*, 162 S.W.3d 689, 697 (Tex. App.—Corpus Christi 2005, pet. denied). The declaratory relief claims at issue here will not confer additional substantive rights beyond those available in a trespass-to-try-title suit. *See Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex. App.—Texarkana 1991, no writ) (applying the "disclaimer rule" applicable to trespass-to-try-title actions even though plaintiffs sought only a declaratory judgment regarding ownership of the mineral estate). This is the case regardless

---

[6] Originally enacted in 1919, the Texas Relinquishment Act governs the State's retention of ownership to the minerals underlying permanent school fund property. *See* Act of July 31, 1919, 36th Leg., 2d C.S., ch. 81, § 1, 1919 Tex. Gen. Laws 249 (current version at Tex. Nat. Res. Code Ann. §§ 52.171-.190 (West 2001)).

of Koch's reliance on the UDJA's specific language contemplating the construction of a deed or a statute. *See Kennesaw Life & Accident Ins. Co. v. Goss*, 694 S.W.2d 115, 117-18 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Notwithstanding the manner in which they are pleaded, Koch's claims against the GLO for declaratory relief to determine whether the dirt, soil, sand, gravel, caliche, and limestone on her property are part of the mineral estate are claims involving title to real property and are barred by sovereign immunity. *See State v. Beeson*, 232 S.W.3d 265, 271-72 (Tex. App.—Eastland 2007, pet. abated) (finding suit for declaratory judgment that plaintiff held easement over state property to be barred by sovereign immunity because it was brought against the State); *Bell v. State Dep't of Highways & Pub. Transp.*, 945 S.W.2d 292, 293-94 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (finding suit for declaratory judgment concerning title to land to be barred by sovereign immunity despite plaintiffs' contention that suit construed adverse possession statutes and fell under UDJA section 37.004). *Cf. Callaway*, 971 S.W.2d at 151-52 (finding declaratory judgment action to construe easement agreement analogous to a breach of contract suit, which "cannot be maintained without legislative permission").

### Constitutional Takings Claim

Koch also seeks a declaration that the GLO's removal of any disputed materials, including limestone, was a violation of the takings provisions of the United States and Texas constitutions as well as a declaration that any monies obtained by the State for such limestone be returned to Koch. This is as an assertion of a constitutional takings claim via a claim for declaratory relief.

Sovereign immunity does not shield the State from a claim based on an unconstitutional taking of property. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). The Texas Constitution itself waives immunity for the taking, damage, or destruction of property for public use. *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980). Under the constitution, "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I. § 17. Likewise, the federal Constitution states, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.

The GLO does not dispute that it has no sovereign immunity against a takings claim under the federal or state constitution. Unlike a declaratory judgment action regarding title, a takings claim is not a functional equivalent of a trespass-to-try-title claim. As stated by the First Court of Appeals:

> The available remedy is a key distinction between the two. While one suit quiets title and possession of the property, the other allows only for just compensation for the property taken or used—the prevailing party does not regain use of land lost to the public's use, or win possession of it.

*Porretto v. Patterson*, 251 S.W.3d 701, 708 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citation omitted). In *Porretto*, the GLO had leased land to the City of Galveston, and the plaintiffs, claiming title to the leased property, sued the GLO for inverse condemnation for the wrongful taking of their land. *See id.* at 706-07. The court held that sovereign immunity did not bar the takings claim as it was not, in effect, a trespass-to-try-title suit, and if the plaintiffs proved ownership of the disputed

9

property, they could recover compensation under the takings claim, although a judgment on that claim would not invalidate the GLO's lease. *See id.* at 708-10.

The Thirteenth Court of Appeals reached a similar result in *Kenedy Memorial Foundation v. Mauro*, 921 S.W.2d 278 (Tex. App.—Corpus Christi 1995, writ denied). In that case, the plaintiff filed suit to determine boundary and title to approximately 35,000 acres of land. *See* 921 S.W.2d at 280. Despite the GLO's assertion that title to the disputed land belonged to the State, the court held that governmental immunity offered no shield to the plaintiff's takings claim because the Texas Constitution itself is the authorization for the claim. *See id.* at 281-82.

The GLO argues, however, that Koch cannot assert a takings claim. According to the GLO, its claim of title to the disputed materials establishes the absence of the GLO's *intent* to commit a taking.[7] To establish a takings claim, Koch must prove (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property, (3) for public use. *Little-Tex Insulation Co.*, 39 S.W.3d at 598. The GLO argues that Koch cannot satisfy the first element of a takings claim because the GLO cannot have the requisite intent to "take" private property in the constitutional sense when it acts on a claim of title. The GLO contends that if the State believes it is the owner of property, its use of that property cannot be an intentional act to take the property of another.

---

[7] The GLO points out that the courts in *Porretto* and *Kenedy Memorial Foundation* did not address the issue of intent in the context of the State's colorable claim to title. *See Porretto v. Patterson*, 251 S.W.3d 701, 709 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (rejecting the government's argument on intent because the government made no "colorable assertion of ownership in the land"); *Kenedy Mem'l Found. v. Mauro*, 921 S.W.2d 278, 282 (Tex. App.—Corpus Christi 1995, writ denied) (issue of intent not addressed).

To support its contention regarding intent, the GLO cites to case law in which a takings claim was alleged in the context of a contract dispute. According to the Texas Supreme Court, when the State's withholding of property or money occurs in a contractual context, the State does not have the requisite intent to commit a taking, as it is "acting within a color of right under the contract and not under its eminent domain powers." *Id.* at 598-99. In reaching this holding, the supreme court recognized that the State sometimes wears two different "hats"—one as party to a contract and the other as sovereign—and when acting as the contracting party, the State is acting "akin to a private citizen." *See id.* at 599. The GLO submits that this same reasoning should apply whenever the State "believes" it owns the real property at issue because in such a case it acts within a color of right as a landowner.

We are not persuaded that the State's subjective belief regarding its title to property, by itself, changes or dictates the capacity in which the State acts. The GLO does not identify any authority to support its view that when the State acts in the role of a self-interested landowner—even though an actual dispute exists as to whether it is in fact the landowner—the State acts within a "color of right" in the same way as when it acts in its contractual capacity. We have found no authority holding that the State acts akin to a private citizen or other than as sovereign in such a circumstance. The analysis might be different if it is determined that the State is, in fact, the property owner. However, absent such a determination, the State's intentional act of taking property for public use is an exercise of its eminent domain powers. The power of eminent domain is a sovereign power. *See City of Dallas v. VSC, LLC*, 242 S.W.3d 584, 593 (Tex. App.—Dallas 2008, pet. filed).

11

> [T]he state *in the exercise of its sovereign authority* has the right to take, damage, or destroy private property for a public use, subject, of course, to the right of the owner thereof to adequate compensation. These principles of law are so well established and uniformly recognized that it is trite to repeat them.

*Texas Highway Dep't v. Weber*, 219 S.W.2d 70, 71 (Tex. 1949) (emphasis added). When a plaintiff alleges a state taking of property and title to that property is in dispute, the State cannot evade its constitutional obligations merely by asserting that it "believes" it is acting as landowner rather than as sovereign regardless of whether that belief is, in fact, accurate. Otherwise, the State would be in the position of unilaterally determining the outcome of takings disputes simply by declaring a subjective belief—whether right or wrong—that it thought it owned the property. Takings jurisprudence does not work this way.

The GLO also cites to case law that applies the following standard of intent, which the GLO asserts is determinative in current Texas takings jurisprudence:

> [W]hen a governmental entity physically damages private property in order to confer a public benefit, that entity may be liable under Article I, Section 17 if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action . . . .

*City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004). However, it has not been established that the *Jennings* intent standard applies beyond the context in which it arose. In *Jennings*, the parties agreed that the City's act was intentional. The question was the level of intent required concerning the damage *caused* by that act. *See id.* at 313. Likewise, the cases in which the *Jennings* intent standard has been applied involve circumstances in which the governmental entity's

intentional act is not the actual physical taking or damaging of property, but rather the cause of a physical taking or damaging of property. *See, e.g.*, *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 550 (Tex. 2004) (release of water from reservoir caused flooding that damaged land); *City of Arlington v. State Farm Lloyds*, 145 S.W.3d 165, 166 (Tex. 2004) (dislodging of clogged sewer caused sewage backup into residence); *City of Dallas v. Zetterlund*, 261 S.W.3d 824, 831-32 (Tex. App.—Dallas 2008, no pet.) (city hired independent contractors who invaded and used plaintiff's land); *Coyne v. Kaufman County*, 144 S.W.3d 129, 133-34 (Tex. App.—Eastland 2004, no pet.) (truck operation on county road caused dust, erosion, and flooding onto plaintiffs' property).

The *Jennings* intent standard was developed to draw a line between mere negligence and an unconstitutional taking. *See Gragg*, 151 S.W.3d at 554-55; *Karnes City v. Kendall*, 172 S.W.3d 624, 628-29 (Tex. App.—San Antonio 2005, pet. denied). Mere negligence that eventually contributes to property damage does not amount to a taking. *Gragg*, 151 S.W.3d at 554. It makes sense for the *Jennings* intent standard to be applied when the governmental entity's intentional act is not the actual taking of the property in the first instance, but an act that causes damage or destruction to a piece of property, which may constructively amount to a taking. Here, however, the intentional act alleged is the physical taking and dominion over the property at issue. There is no need to ask whether the GLO intended its physical taking of limestone to cause a constructive taking of other property. We conclude, therefore, that the *Jennings* intent standard is inapplicable in cases such as this, when the intentional act is the taking of the property at issue. *Cf. City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 244-

13

45 (Tex. App.—San Antonio 2006, pet. denied) (*Jennings* intent standard not applicable to regulatory takings).

The GLO's position on the takings claim is, at its essence, an attempt to add an intent standard regarding the ownership of the property alleged to be taken. We are of the opinion that the cases cited by the GLO do not support the application of such a standard of intent in situations such as this one. Therefore, we decline to adopt the GLO's position. *See VSC*, 242 S.W.3d at 593 ("The City misreads *Little-Tex Insulation Co.* as requiring, for a takings claim, that the government intend to act under its eminent domain power."). *See also Zetterlund*, 261 S.W.3d at 833 (declining to impose an intent standard regarding the public-use element of an inverse condemnation claim). Whether the GLO acted in good faith in physically removing the limestone or believed that its taking of the limestone was not a "taking" of property as a constitutional matter, has no impact on whether the State's act in taking the limestone was intentional. *See City of Anson v. Harper*, 216 S.W.3d 384, 392-93 (Tex. App.—Eastland 2006, no pet.) ("There is no indication that the City had any desire or intention to harm plaintiffs; but, unlike *Jennings*, this is not an attenuated claim based upon unhappy circumstances. Plaintiffs' claim is the direct result of the City's dirt work."). Such a belief—whether or not in good faith—also should not impact whether the State's act of physical taking was a compensable taking under the constitution.

> As the Texas Supreme Court has observed, if the government could claim immunity for a taking by simply asserting title, then it need never legally condemn land—it "could simply appropriate it, and the landowner would be entitled to no compensation unless the Legislature granted him permission to sue."

*Porretto*, 251 S.W.3d at 708 (quoting *Griffin v. Hawn*, 341 S.W.2d 151, 153 (Tex. 1960)).

14

Finally, the GLO cites *Domel v. City of Georgetown*, 6 S.W.3d 349 (Tex. App.—Austin 1999, pet. denied), for the proposition that Koch's takings claim cannot meet the second element of an inverse condemnation claim—"that resulted in a 'taking' of property." In *Domel*, this Court was faced with a disputed property right, concluded as a matter of law that the State owned the property right, and affirmed the trial court's summary judgment dismissing the plaintiff's takings claim. *See* 6 S.W.3d at 361-62. Unlike in *Domel*, we do not have summary-judgment evidence before us to settle the title dispute between Koch and the GLO. We agree with the GLO that if it is the title owner of the disputed materials on Koch's land, Koch cannot assert a valid takings claim. This, of course, begs the question ultimately in dispute here. The GLO's mere allegation of title for purposes of its plea to the jurisdiction is insufficient to demonstrate that the GLO is, in fact, the title owner as a matter of law.

Sovereign immunity does not bar Koch's constitutional takings claim seeking compensation for the GLO's removal of limestone from her property. If it is determined that the State owns the limestone on Koch's property, Koch cannot recover under her takings claim. However, the State's allegation of ownership, by itself, does not deprive the district court of jurisdiction over Koch's claim.

*Conclusion*

We reverse the portion of the district court's judgment dismissing Koch's constitutional takings claim, and remand that claim to the district court for further proceedings. We affirm the portion of the district court's judgment dismissing all other claims.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed in part; Reversed and Remanded in part

Filed:   December 19, 2008