Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# MEMORANDUM OPINION

No. 04-11-00209-CV

**CITY OF CIBOLO**, Texas,
Appellant

v.

Shelby **KOEHLER**, James G. Koehler, Lenroy Koehler, Calvin Koehler, Larry Koehler,
Frances C. Durben, Betty Willeman, and Dennis Koehler,
Appellees

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 09-0924-CV
Honorable Dwight E. Peschel, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  November 23, 2011

AFFIRMED

        This interlocutory appeal arises from an easement dispute between the City of Cibolo and

various landowners.  The City contends it has properly constructed a drainage channel in an

easement on the landowners' property, while the landowners contend the City has failed to fulfill

its obligations under the parties' drainage easement agreement.  When the landowners sued the

City, the City unsuccessfully sought dismissal on sovereign immunity grounds.  The City now

appeals the trial court's order denying the pleas to the jurisdiction it filed asserting sovereign

immunity. The appellees, Shelby Koehler, James Koehler, Lenroy Koehler, Calvin Koehler, Larry Koehler, Frances C. Durben, Betty Willeman, and Dennis Koehler (collectively referred to as the "Koehlers"), filed a motion to dismiss the appeal which was carried with the merits of the appeal. In the motion, the Koehlers assert that section 51.014 of the Texas Civil Practice and Remedies Code, which permits the City to appeal the trial court's order denying its pleas, is unconstitutional as applied to them because "a judicial determination has been made that the City's conduct is unconstitutional." In the alternative, the Koehlers contend the City failed to assert its pleas within the time required by section 51.104; therefore, any further action in the trial court in the underlying proceeding is not subject to an automatic stay. In its appeal, the City contends: (1) the trial court erred in denying its First Amended Plea to the Jurisdiction because no waiver of immunity from suit exists for a declaratory judgment action; and (2) the trial court erred in denying its Second Plea to the Jurisdiction because the evidence conclusively defeated elements of the Koehlers' takings claim. We affirm the trial court's order denying the City's pleas.

## BACKGROUND

On August 22, 2006, the City and the Koehlers entered into a Drainage Easement pertaining to the City's construction of a drainage channel on property owned by the Koehlers. The property subject to the permanent easement consisted of 17.94 acres, and the Drainage Easement provided, in relevant part:

> B.     Engineering design and final construction will occur in [sic] manner to ensure that those areas located outside of the permanent easement shall be removed from the FEMA 100-year floodplain.

> H.     In consideration for the dedication of the drainage easement, Grantor or Grantor's heirs or assigns shall receive full credit toward the City's drainage impact fees for that portion of the fees attributable to easement, right-of-way, or land acquisition costs. This credit toward the City's drainage impact fees is a

material part of the consideration furnished by Grantee to Grantor for the easement granted hereby.

I.    Grantor or Grantor's heirs or assigns shall receive full credit toward the City's park development/park improvement fees for parkland dedications or parkland/recreation improvements within the property that are approved by the City Council in accordance with the City's Land Subdivision Ordinance and other applicable rules and regulations in effect at the time that credit for such improvements are requested.    This credit toward the City's park development/park improvement fees is a material part of the consideration furnished by Grantee to Grantor for the easement granted hereby.

P.    Grantee shall complete proposed stormwater drainage improvements to the satisfaction of the City Council within two (2) years of the effective date of this easement document.  Should the City Council fail to accept the stormwater drainage improvements within two (2) years as specified herein, this agreement shall be deemed to be null and void.  This time period may be extended upon written agreement by the Grantee and the Grantor or the Grantor's heirs and assigns.

Q.    In the event that performance by Grantee of its obligations under the terms of this agreement shall be interrupted or delayed by an act of God, by acts of war, riot, or civil commotion, or by an act of State, by strikes, fire, flood, or by the occurrence of any other event beyond the control of the Grantee, Grantee shall be excused from such performance for the period of time as such occurrence shall have lasted or as is reasonably necessary after such occurrences abates for the effects thereof to have dissipated.

The Drainage Easement was signed by the parties on August 22, 2006.  It was recorded for the first time on August 23, 2006.  On August 29, 2006, the Drainage Easement was recorded a second time in order to "pin the corners" of the metes and bounds description which, as originally drafted, did not close.  On February 21, 2007, the Drainage Easement was recorded a third time in order to shift the location of the drainage channel because the location originally targeted was located in a wetlands area, and federal law precluded construction in that area.

In August of 2007 and May of 2008, the Koehlers sent letters to the City demanding that the City specifically perform its obligations under the Drainage Easement, and work continued to be performed by the City.  In May of 2009, the Koehlers filed a lawsuit against the City seeking

specific performance of the City's obligations under the Drainage Easement. A year later, the Koehlers filed a motion for partial summary judgment asserting that the Drainage Easement was void pursuant to paragraph P because the City Council had not accepted the stormwater drainage improvements within two years from the date of the Drainage Easement. In July of 2010, the Koehlers amended their petition to seek a declaration that the Drainage Easement was void. The Koehlers subsequently filed a second amended petition asserting claims for declaratory relief and a takings claim based on the easement being void.

After the City filed its First Amended Plea to the Jurisdiction asserting immunity barred the Koehlers' claims for declaratory relief, the trial court signed an order granting the Koehlers leave to amend their pleading "to non-suit [all] Uniform Declaratory Judgment Relief, including all requests for attorney's fees under the Uniform Declaratory Judgment Act." The order stated that the pleading was thereby so amended. The City then filed a Second Plea to the Jurisdiction asserting the evidence established that the takings claim failed on three elements: (1) the Koehlers consented to the City's actions; (2) the City lacked the requisite intent for a taking; and (3) the Koehlers received compensation for the easement.

At the hearing before the trial court on the City's pleas, the Koehlers' attorney reminded the trial court that a prior hearing was held on the Koehlers' motion for partial summary judgment asserting the Drainage Easement was void, and the trial court had taken that matter under advisement. A month after the hearing, the trial court issued a letter order denying the City's pleas and granting the Koehlers' motion for partial summary judgment. Because this is an interlocutory appeal, only the portion of the order denying the City's pleas is before this court for consideration.

## STANDARD OF REVIEW

A plea to the jurisdiction based on sovereign immunity challenges a trial court's jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). Such a plea raises a question of law that we review *de novo*. *Id*. We focus first on the plaintiff's petition to determine whether the facts pled affirmatively demonstrate that jurisdiction exists. *Id*. We construe the pleadings liberally, looking to the pleader's intent. *Id*. at 643. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead. *Id*. In some instances, however, a plea to the jurisdiction may require the court to consider evidence pertaining to the jurisdictional facts. *Id*. A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted. *Id*.

## MOTION TO DISMISS

### A. Judicial Determination

The Koehlers' motion to dismiss is initially premised on their contention that a judicial determination has been made that the City's conduct resulted in an unconstitutional taking. As previously noted, only the portion of the trial court's ruling denying the City's pleas is before this court. The trial court did not expressly state the basis for its denial of the pleas.

The trial court could have denied the City's First Amended Plea because the Koehlers non-suited all of their claims for declaratory relief; such a ruling would not have required any judicial determination regarding whether a taking occurred. Accordingly, in denying the City's First Amended Plea, the trial court did not necessarily make any judicial determination regarding the takings claim. In denying the City's Second Plea to the Jurisdiction, the trial court could

have determined that fact issues were raised that precluded it from granting the plea. *See State v. Holland*, 221 S.W.3d at 643. A determination that a fact issue precluded the granting of the plea would not equate to a judicial determination that the City's actions constituted a taking. Therefore, because the trial court could have denied the City's pleas without making a judicial determination that the City's actions resulted in a taking, the Koehlers' request for a dismissal is denied.

## B. Automatic Stay

The Koehlers also argue that this appeal should not result in an automatic stay of the underlying proceedings because the City failed to assert its pleas within the time required by section 51.014. An appeal of an order denying a plea to the jurisdiction entitles the appellant to an automatic stay if the plea was filed and requested for submission or hearing within certain time periods. Relevant to this case, when the plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action, the plea must be filed and set for a hearing within 180 days of the date the defendant files its responsive pleading. TEX. CIV. PRAC. & REM. CODE § 51.014.

The Koehlers did not allege the Drainage Easement was void and thereby resulted in a taking until it amended its pleading in July of 2010. The City filed its First Amended Plea in September of 2010, and a fiat requested a hearing for October 4, 2010. The City filed its Second Plea in October of 2010, and a fiat requested a hearing for November 1, 2010. Accordingly, both pleas were filed and hearings were requested on both pleas within the 180 days allowed by section 51.014; therefore, the City complied with the statutory deadline relating to the automatic stay.

The Koehlers' motion to dismiss is denied.

## DECLARATORY RELIEF

The City's first argument relates to the Koehlers' declaratory relief claims. The Koehlers respond that they non-suited all of their claims for declaratory relief. In its reply brief, the City agrees that this issue is moot **if** all claims for declaratory relief were nonsuited.

Although the Koehlers appear to concede that they cannot seek declaratory relief claims, they assert the trial court was required to determine whether the easement was void in addressing the elements of their takings claim challenged in the City's Second Plea. The trial court's authority to determine the validity of the easement in considering whether the Koehlers consented to the taking is discussed in the portion of this opinion addressing the consent element of the takings claim. We hold that the trial court was authorized to make this determination outside of the declaratory judgment context.

The Koehlers also argue that they have retained their right to a "judgment specifying the legal boundaries of the drainage channel, the CITY's legal rights, if any, to access and maintain the channel, and the KOEHLERS legal rights, if any, to access and use the channel such that the KOEHLERS are capable of passing marketable, good title to a willing buyer." The City responds that this claim by the Koehlers seeks to determine boundaries; therefore, it is barred by immunity. *See Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 456 (Tex. App.—Austin 2008, pet. denied) (holding plaintiff not entitled to declaration determining boundaries or rights State possessed under patents reserving mineral estate). We agree that the Koehlers are not entitled to a judicial declaration of the legal boundaries of the Drainage Easement under a claim for declaratory relief. *See id*. We disagree, however, with the implication that a determination of the parties' rights under the Drainage Easement could not be incidental to the Koehlers' takings claim. During a trial on the merits of the Koehlers' takings claim, if a finding is made that a

taking occurred, the trier of fact may be required to determine the boundaries of the land taken in assessing damages. *See Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 627 (Tex. 2002) (damages measured by the market value of the part taken plus any diminution in value to the remainder of the land). Moreover, although a taking is not dependent on a transfer of property rights, the inclusion of a legal description of the rights transferred would not appear to be precluded as relief available in the context of a takings claim. *See City of Keller v. Wilson*, 86 S.W.3d 693, 699 (Tex. App.—Fort Worth 2002), *rev'd on other grounds*, 168 S.W.3d 802 (Tex. 2005) (noting City might be entitled to conveyance of title to property found to have been taken if properly pled).

### TAKINGS CLAIM

To establish a takings claim, the claimant must show that a governmental unit acted intentionally to take or damage property for public use. *State v. Holland*, 221 S.W.3d at 643. A person who consents to the governmental action cannot validly assert a takings claim. *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 844 (Tex. 2010).

The City contends that the Drainage Easement conclusively negates the Koehlers' takings claim as a matter of law because: (1) the easement conclusively establishes that the Koehlers consented to the easement; (2) the easement conclusively negates the requisite intent by the City to take the property under eminent domain powers; and (3) the easement conclusively establishes that the Koehlers received consideration for the Drainage Easement. The City also contends that the trial court could not make a determination that the Drainage Easement was void independent of a declaratory judgment claim, which as previously noted would be barred by immunity. The Koehlers recognize in their brief, "If the Drainage Easement were not *void*, [they] would likely be unable to establish" absence of consent and intentional conduct on the part of the City.

The questions presented in relation to the analysis of the takings claim are not easily separated into an evaluation of the different elements of a takings claim in the manner in which the City briefs those elements. Instead, some questions affect all of the elements and other questions only impact specific elements. Accordingly, we will analyze the takings claim by addressing these questions:

1. Did the trial court have the authority to determine if the Drainage Easement was void in the context of the Koehlers' takings claim or would that determination result in a declaration barred by immunity?

2. Did the evidence conclusively establish that the Drainage Easement was not void?

3. Even if the Drainage Easement is void, does the existence of the Drainage Easement nevertheless conclusively negate the requisite intent to establish a taking?

**A**.     **Did the trial court have the authority to determine if the Drainage Easement was void in the context of the Koehlers' takings claim or would that determination result in a declaration barred by immunity?**

The City argues that the Koehlers' takings claim is premised on the trial court declaring that the easement is void. The City cites cases involving contracts in which the courts held declaratory relief is barred. *See City of Houston v. Williams*, 216 S.W.3d 827, 829 (Tex. 2007); *State, Tex. Dept. of Transp. v. Allodial Ltd. P'shp*, 280 S.W.3d 922, 927-28 (Tex. App.—Dallas 2009, no pet.). The case law is clear that a party cannot circumvent sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim. *City of Houston*, 216 S.W.3d at 829. The case primarily relied upon by the City, however, notes a distinction between seeking a declaratory judgment on a takings claim and a takings claim outside the declaratory judgment context. *Allodial Ltd. P'shp*, 280 S.W.3d at 928.

Although initially the Koehlers' pleadings sought a declaratory judgment on their takings claim, which is impermissible, once the claims for declaratory judgment were non-suited, immunity did not bar the takings claim outside that context. *See id.* Moreover, we agree with the Koehlers that *State v. Brownlow*, 319 S.W.3d 649 (Tex. 2010), supports the trial court's ability to interpret the ongoing validity of the easement in the context of the takings claim.

In *State v. Brownlow*, the State initiated condemnation proceedings to obtain a fee estate in 12.146 acres of land in order to construct a floodplain mitigation pond required for a highway expansion project. 319 S.W.3d at 651. The parties eventually reached an agreement, and an Agreed Judgment was signed granting the State a permanent easement over the 12.146 acres of land. *Id.* Subsequently, a dispute arose with regard to whether the State could use 87,500 cubic meters of dirt it removed from the easement in the highway construction. *Id.* The Brownlows sued for inverse condemnation of the dirt. *Id.* The Brownlows claimed the State unconstitutionally took the excavated dirt, entitling them to compensation. *Id.* The State filed a plea to the jurisdiction, arguing that the Brownlows failed to state a takings claim because the Agreed Judgment gave the State the right to remove and use the dirt. *Id.* at 653.

The Texas Supreme Court noted, "The heart of the State's argument is that the Agreed Judgment expressly or implicitly gives it the right to remove the dirt excavated from the Brownlows' land and use it in the highway construction, or that, in any event, use of the dirt is reasonably necessary for the State to fully enjoy the easement rights it was expressly granted." *Id.* The court then reviewed the language of the Agreed Judgment and held that the Agreed Judgment did not allow the State to use the dirt for highway construction purposes because the easement was limited to actions pertaining to the mitigation pond. *Id.*

Similarly, in this case, the City argues that the evidence conclusively established that the Koehlers' takings claim fails because the claim is defeated by the existence of the Drainage Easement. In order to properly consider the takings claim, the trial court was required to consider the rights the City was granted under the Drainage Easement, just as the Texas Supreme Court considered the rights the State was granted under the Agreed Judgment in *Brownlow*. Therefore, the trial court had the authority to determine whether the evidence conclusively established that the easement was void in evaluating whether the easement established consent as a matter of law as asserted by the City in its Second Plea.

**B. Did the evidence conclusively establish that the Drainage Easement was not void?**

In response to the Koehlers' contention that the Drainage Easement is void because the improvements were not completed and accepted by City Council within two years, the City asserts the Koehlers consented to the ongoing construction activities as a matter of law by demanding performance in writing and in the lawsuit they originally filed. The City also contends that the doctrine of quasi-estoppel bars the Koehlers from asserting the easement is void because they demanded specific performance. Finally, the City contends the evidence conclusively established that performance within the two-year time frame was excused by intervening events including the discovery of the wetlands, rain delays, and the Koehlers' disagreements over the construction activities.

The Koehlers respond that when the City failed to comply with the two-year deadline, the easement was rendered void, and the City's continued presence on the property was as a licensee. As a licensee, the City could be required to leave at any time even if previously permitted to continue its efforts to complete the construction. The Koehlers also respond that any extension of the deadline was required to be in writing under the statute of frauds, and the

deadline could not be modified by actions. Finally, the Koehlers assert that the City did not argue that the deadline was excused by intervening events in its plea to the jurisdiction; therefore the issue is not properly before this court for consideration.

1. Consent, Quasi-Estoppel, and Consideration

A person who consents to an action by the government cannot validly assert a takings claim. *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority*, 320 S.W.3d 829, 844 (Tex. 2010). In *Kirby Lake*, a group of developers entered into an agreement with a water authority to build water and sewer facilities and to lease those facilities to the water authority until the authority purchased them. 320 S.W.3d at 832. The water authority agreed to purchase the facilities for 70% of their cost upon receipt of voter-approved bond funds. *Id*. The water authority also agreed to include "in any bond election it [held] subsequent to the effective date of this Agreement bond authorization in an amount sufficient to pay the purchase price of the Facilities." *Id*. at 833. When the water authority held a bond election omitting the reimbursement provision for approval, the developers sued, alleging a breach of the agreement and alleging the water authority's continued possession of the facilities constituted a taking. *Id*. at 834. The Texas Supreme Court held that the developers consented to the taking as evidenced by the agreement and continued to treat the agreement as still in effect by continuing to demand performance and suing to enforce the agreement. *Id*. at 844.

In this case, unlike in *Kirby Lake*, the Koehlers ceased to treat the Drainage Easement as still in effect when they amended their pleading to assert that the easement was void. Based on the two-year provision contained in paragraph P, the trial court could properly have determined that, at the very least, a fact issue was raised with regard to the ongoing validity of the easement. Thus, the trial court could have denied the plea on the basis of consent.

In order to conclusively establish consent based on the easement after the Koehlers asserted that the easement was void under paragraph P, the City was required to conclusively establish that the Koehlers were estopped from revoking their consent. Even the case cited by the City to support its contention that the Koehlers impliedly consented to the extension based on their acquiescence relies on estoppel as the theory supporting the implied consent. *See Vrazel v. Skrabanek*, 725 S.W.2d 709, 712 (Tex. 1987). The estoppel theory in that case, however, was *estoppel in pais*, which may be invoked against a party only when he has failed to do that which he had a duty to do. *Id*. That estoppel theory would not apply in this case because the Koehlers had no duty to extend the two-year deadline.

The doctrine of quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by a party. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000); *Eckland Consultants, Inc. v. Ryder, Stillwell, Inc.*, 176 S.W.3d 80, 87 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The doctrine applies when it would be unconscionable to allow a party to maintain a position inconsistent with one in which it had acquiesced, or from which it had accepted a benefit. *Lopez*, 22 S.W.3d at 864; *Eckland Consultants, Inc.*, 176 S.W.3d at 87. "Thus, quasi-estoppel forbids a party from accepting the benefits of a transaction and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Eckland Consultants, Inc.*, 176 S.W.3d at 87. "Unlike equitable estoppel, quasi-estoppel requires no showing of misrepresentation or detrimental reliance." *Id*.

Other than reciting the law, the City makes no real argument in its brief for the application of the quasi-estoppel doctrine. The Koehlers cite a case recognizing that quasi-estoppel has only been applied to bar a challenge to the validity of fully performed contracts.

*Parks v. Landfill Marketing Consultants, Inc.*, No. 14-02-01243-CV, 2004 WL 1351545, at *5 (Tex. App.—Houston [14th Dist.] June 17, 2004, pet denied) (mem. op.).

Fundamentally, we find it difficult to understand the argument in favor of applying the quasi-estoppel doctrine in this context. It is difficult to understand how it would be unconscionable to require the City to abide by the two-year deadline it agreed to in writing in the Drainage Easement. Although the Koehlers may have tolerated the City's failure to comply with the deadline for a period of time, this does not make it unconscionable for them to subsequently enforce the deadline at some point in time when the City still failed to comply with the deadline.

Moreover, in the exercise of equitable jurisdiction, trial courts necessarily are vested with discretionary power, which appellate courts are not authorized to disturb except in cases where an abuse of discretion is clearly shown. *Hamilton v. Morris Resources, Ltd.*, 225 S.W.3d 336, 346 (Tex. App.—San Antonio 2007, pet. denied). Whether to utilize estoppel is within a court's discretion. *See id*. Under the facts of this case, the trial court would have been within its discretion in concluding that the Koehlers' enforcement of the deadline was not unconscionable merely based on the Koehlers' prior efforts to seek specific performance of the easement.

Therefore, because the trial court could have determined that a fact issue was raised regarding whether the easement was void, the evidence does not conclusively establish consent based on the easement. Moreover, the Koehlers are not estopped from arguing that the easement is void based on their prior efforts to obtain specific performance under the easement. Similarly, although the City argues the Koehlers received consideration under the easement, if the easement is void, the Koehlers would not have any right to any consideration they had the potential to receive under the easement in the future. Those rights would be extinguished also. Accordingly,

the City failed to establish that the evidence conclusively negated jurisdiction over the takings claim because the City failed to conclusively establish consent.

    2.    Intervening Events

The excuse of the two-year deadline based on intervening events is an argument that was not raised by the City in its plea to the jurisdiction. The Koehlers assert that the City, therefore, has failed to preserve this argument for our consideration. We recognize that there is a split of authority on this issue. *Compare Tex. Dept. of Transp. v. Olivares*, 316 S.W.3d 89, 95 & n. 2 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Real-Edwards Conservation & Reclamation Dist. v. Save the Frio Foundation, Inc.*, No. 04-09-00502-CV, 2010 WL 547045, at *5 n.2 (Tex. App.—San Antonio Feb. 17, 2010, no pet.); *Harris County Mun. Util. Dist. No. 156 v. United Somerset Corp.*, 274 S.W.2d 133, 137-38 (Tex. App.—Houston [1st Dist.] 2008, no pet.), *with*, *Kinney County Groundwater Conservation District v. Boulware*, 238 S.W.3d 452, 461 (Tex. App.—San Antonio 2007, no pet.); *Austin Ind. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App.—Austin 2006, pet. denied); *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 687 (Tex. App.—Dallas 2003, pet. denied). Because we believe the City's argument is unavailing even if properly preserved, we will assume for purposes of this appeal that the argument was preserved.

The City argues that the intervening events made performance within the two-year time frame impracticable. The City relies on case law pertaining to the defense of commercial impracticability that excuses performance under a contract in its entirety. If the defense is applicable, the obligation to perform under a contract is completely discharged. *See Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 339 (Tex. App.—Eastland 2009, no pet.). Another term

for the commercial impracticability defense is impossibility of performance. *Id*. The impossibility defense generally applies in three instances: (1) the death or incapacity of a person necessary for performance; (2) the destruction or deterioration of a thing necessary for performance; and (3) prevention by governmental regulation. *Id*. at 340. None of those circumstances was pled as an intervening event by the City in this case, so we disagree that the intervening events asserted by the City completely discharged the City's obligation to perform its obligations under the Drainage Easement.[1]

**C.    Even if the Drainage Easement is void, does the existence of the Drainage Easement nevertheless conclusively negate the requisite intent to establish a taking?**

Finally, the City contends that the Koehlers have not asserted a viable takings claim because the City conclusively negated an intentional taking by conclusively establishing that it constructed the drainage channel under color of contract. To establish a takings claim, the claimant must show that a governmental actor acted intentionally to take or damage property for a public use. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). When the government acts pursuant to colorable contract rights, it lacks the necessary intent to take under its eminent-domain powers and thus retains its immunity from suit. *Id*. This is because the State may wear two hats: the State as a party to the contract and the State as a sovereign. *Id*. The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers. *Id*.

In *State v. Holland*, Herbert Holland developed a process to clean oil-contaminated bilge water. 221 S.W.3d at 641. The State contracted with Holland's companies for assistance in designing filtration units using this process. *Id*. The units were constructed, and Holland's companies were paid pursuant to the terms of the contract. *Id*. Holland later received a patent on

---

[1] Although the discovery of the wetlands could have rendered performance impossible because the construction was barred by federal law, the parties consented to moving the location of the drainage channel.

the process and began demanding additional payment from the State for patent royalties. *Id*. The State refused to pay, and Holland sued the State for taking his patented technology. *Id*.

The State asserted that it was acting under color of contract and, therefore, Holland failed to state a viable takings claim. *Id*. at 643. The State argued that the fact that its contracts were with Holland's companies and not Holland was immaterial because the focus is whether the State had the requisite intent to take property invoking its eminent domain powers. *Id*. Holland responded that he had no contract with the State and therefore the State's use of his patent was unauthorized. *Id*.

The Texas Supreme Court agreed with the State, asserting the "absence of an express contract between Holland and the State, or uncertainties about the existence of an implied contract between them, are immaterial to determining the capacity in which the State is acting." *Id*. The court noted that in articulating the principle distinguishing the State's eminent domain capacity from its contractual capacity in an earlier decision it relied on *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex. Civ. App.—Austin 1951, writ ref'd). That case involved a lawsuit by a printer to recover damages for the manufacture and delivery of cigarette tax stamps to the State. *Id*. at 643-44. The prior year, the printer had delivered stamps pursuant to a competitively bid one-year contract, and the State had paid the printer. *Id*. at 644. The printer then continued to manufacture and deliver stamps in the following years based on an oral agreement with a State employee after the one-year contract expired. *Id*. In rejecting the takings claim, the court first held that no enforceable contract existed between the State and the printer because the State failed to abide by the legally required bidding procedures. *Id*. However, the court held that the printer could not assert a takings claim because the State had accepted the stamps under the

purported, but nonexistent, contract. *Id*. Therefore, the stamps had not been taken under the State's eminent domain power. *Id*.

In this case, the City argues that even if the easement is void, it was acting under color of contract because its ongoing actions would be based on a purported, but nonexistent, contract. If the easement is void, however, the City's continued occupation of the Koehlers' property cannot be under color of right because the City would be exercising rights over property to which they were not contractually entitled. *See Brownlow*, 319 S.W.3d at 655 (exercising rights over excavated dirt not authorized by contract constituted a taking). If the trial court determines the easement is void, any ongoing occupation of the Koehlers' property would be without color of right. Accordingly, the trial court properly denied the City's plea based on its argument that it conclusively negated the intent element of the Koehlers' takings claim. *See State v. Holland*, 221 S.W.3d at 642 (fact issue defeats plea to the jurisdiction).

## CONCLUSION

The Koehlers' motion to dismiss is denied. The trial court's order denying the City's pleas to the jurisdiction is affirmed.

Catherine Stone, Chief Justice