CITY OF DALLAS, Appellant,

v.

CKS ASSET MANAGEMENT, INC., Appellee.

No. 05–10–01010–CV.

Court of Appeals of Texas, Dallas.

July 7, 2011.

Jason Keith Fagelman, Oscar Rey Rodriguez, D'Lesli M. Davis, Kyle Morris Schindler, Fulbright & Jaworski L.L.P., Dallas, for Appellant.

James Bachman Greer, Kenneth C. Johnston, Kane Russell Coleman & Logan PC, Dallas, for Appellee.

Before Justices BRIDGES, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

CKS Asset Management, Inc. sued the City of Dallas on an inverse-condemnation claim for the City's construction of the Downtown Center for the Performing Arts on property CKS alleged it owned. The City appeals the trial court's denial of its plea to the jurisdiction, contending (1)

CKS cannot plead a valid claim of inverse condemnation because CKS does not have a property interest in the disputed property and the City had no requisite "intent" to take the property, (2) CKS does not have standing to assert an inverse-condemnation claim, and (3) CKS cannot plead a constitutional waiver of immunity for an inverse-condemnation claim because CKS is effectively asserting a trespass-to-try-title claim for which there is no waiver of the City's immunity. We reverse the trial court's order and dismiss CKS's action for lack of subject-matter jurisdiction.

## Background

Both the City and CKS claim exclusive ownership of the downtown property. While resolution of the ultimate question of superior title to the property is not before us for purposes of this opinion, the background of the parties' claims is relevant to the parties' arguments and our resolution of the City's plea to the jurisdiction. The relevant chain of title to the property begins in 1981, when Sherwood Blount recorded warranty deeds with the County Clerk of Dallas County.

### City's Claim to Title

Thereafter, Sunbelt Savings obtained a judgment against Blount in federal court in 1989 for an amount exceeding $300,000. Sunbelt recorded an abstract of judgment the same year asserting a lien on all of Blount's property, including the downtown property. In 1991, Sunbelt obtained and recorded another judgment against Blount for over $2.8 million. Through a series of assignments, Preston Management Group, Inc. took assignment of the lien rights to both judgments in 2000.

In June of 2000, Preston requested a writ of execution on the 1989 judgment.

The downtown property was posted for foreclosure at a public auction. Preston, as the highest bidder, purchased the property for almost $1 million. The same day, Preston recorded its deed. Later the same year, Preston conveyed the property by special warranty deed to Downtown Joint Venture,[1] which in turn conveyed the property by special warranty deed to the City for $972,120. The City recorded its special warranty deed on September 18, 2000.

Also in September 2000, Preston requested a writ of execution on the 1991 judgment. At the second public foreclosure sale in October, Preston again purchased the downtown property for over $800,000. The same day, Preston recorded the deed, which did not include a property description. Preston filed a correction deed in January 2001 to add the property description.

### CKS's Claim to Title

In 1990, NCNB Texas National Bank also obtained a judgment against Blount for over $1.8 million. CKS purchased that judgment in 1994 and abstracted it in 1995. In an October 2000 foreclosure sale, CKS paid $50,000 for the downtown property pursuant to execution on its 1995 abstracted judgment. CKS recorded the sheriff's deed in December 2000 and recorded an amended deed in April 2001.

### The October 2009 Lawsuit

Years later, after the City began construction for the Downtown Center for the Performing Arts, CKS filed suit alleging it was the owner of the property and that the City and relevant taxing authorities recognized CKS as the owner. CKS asserted an inverse-condemnation claim, requesting

1. In 1999, Blount also executed a quit claim to Downtown Joint Venture in which he conveyed his interest, if any, in the downtown property.

"just compensation." The City answered and filed a plea to the jurisdiction, attaching certified copies of various public records and documentation supporting the City's claim it owned the property. The trial court held an evidentiary hearing and ultimately denied the plea without issuing findings of fact or conclusions of law. This interlocutory appeal followed.

## Standard of Review

■ A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Subject-matter jurisdiction is a question of law; accordingly, we review de novo a trial court's ruling on a plea to the jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex.2007).

■ The plaintiff bears the initial burden of alleging facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228.

## Analysis

The City appeals the denial of its plea to the jurisdiction, raising four issues. It first argues CKS has not pleaded and cannot plead a valid inverse-condemnation claim for two independent reasons: the City did not have the requisite intent for a takings claim because the City was acting under color of title, and CKS has no property interest. Relatedly, it claims that CKS lacks standing because it does not own or have a valid interest in the downtown property. Finally, the City argues CKS cannot plead a constitutional waiver of immunity because CKS's claim is, in reality, a trespass-to-try-title claim for which there is no waiver of the City's immunity from suit. We first address the City's issue as to the requisite intent for a takings claim, which is dispositive of the appeal.

■ The Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation...." TEX. CONST. art. I, § 17(a). Therefore, to establish a takings or inverse-condemnation claim, a claimant must show: (1) an intentional act by the government (2) in a taking of the claimant's property (3) for public use. *Holland*, 221 S.W.3d at 643; *see also City of Dall. v. VRC, LLC*, 260 S.W.3d 60, 65 (Tex.App.-Dallas 2008, no pet.) (inverse condemnation); *Brownlow v. State*, 251 S.W.3d 756, 760 (Tex.App.-Houston [14th Dist.] 2008) (claimant must also have compensable interest in the property at issue), *aff'd*, 319 S.W.3d 649 (Tex.2010). By this express constitutional waiver, governmental immunity does not shield a municipality from an action for compensation under the takings clause. *Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 61 (Tex. 2009). Whether particular facts are sufficient to constitute a taking is a question of law. *Brownlow*, 251 S.W.3d at 760.

The City's argument that it does not have the requisite intent to satisfy a takings claim under the constitution derives from supreme court precedent describing actions by a state under "color of right."

As stated in *General Services Commission v. Little–Tex Insulation Company:*

> Texas courts have long recognized that the State wears two hats: the State as a party to the contract and the State as sovereign. The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers. In this situation, the State does not have the intent to take under its eminent domain powers; the State only has an intent to act within the scope of the contract.

39 S.W.3d 591, 599 (Tex.2001) (internal citations omitted). The City argues, notwithstanding its claim to exclusive ownership of the downtown property, that CKS's inverse-condemnation claim is barred by governmental immunity as a matter of law because the City's contractual "color of right" to the downtown property negates any intent to take under the City's sovereign powers.

As described by the Houston court of appeals, the intricacies of the definition of "color of right" in the immunity context have not yet received a thorough treatment, although courts have attempted to delineate some boundaries. *See MBP Corp. v. Bd. of Tr. of the Galveston Wharves,* 297 S.W.3d 483, 489–90 (Tex. App.-Houston [14th Dist.] 2009, no pet.). For instance, the mere existence of a contract between the governmental entity and a private party "does not build an impenetrable wall nullifying the possibility of other waivers of and exceptions to that immunity." *Tex. Parks & Wildlife Dep't v. Callaway,* 971 S.W.2d 145, 150 (Tex.App.-Austin 1998, no pet.); *see also Little–Tex,* 39 S.W.3d at 601 (Abbott, J., concurring) ("[M]ore than the mere existence of a contract is required to overcome a taking claim[.]"). And, when determining which "hat" the state is wearing for purposes of an immunity analysis, some courts have not been persuaded that "the State's subjective belief regarding its title to property, by itself, changes or dictates the capacity in which the State acts." *Koch v. Tex. Gen. Land Office,* 273 S.W.3d 451, 458–59 (Tex.App.-Austin 2008, pet. filed).

Although courts have suggested subjective belief by, and the mere existence of a contract with, a governmental unit do not establish immunity, the supreme court recently indicated "color of right" is not limited only to circumstances involving a written contract. *See Holland,* 221 S.W.3d at 643. In *Holland,* the General Land Office contracted with two companies to provide services for a construction project. *Id.* at 641. Holland was the "managing member" of one company and the president of the other. *Id.* After Holland received a patent for technology that had been utilized by the GLO in its construction project, he demanded royalties from the GLO; when the GLO refused to pay royalties, Holland filed suit, asserting a takings claim. *Id.* at 641–42. The supreme court examined whether the state had the requisite intent for a takings claim, stating that the "absence of an express contract between Holland and the State, or uncertainties about the existence of an implied contract between them, are immaterial to determining the capacity in which the State is acting." *Id.* at 643. Because the "State accepted Holland's products and his services under color of its contracts" with the two companies, the state lacked the requisite intent to take Holland's patented process under its eminent-domain powers. *Id.* at 644.

This Court and others have expanded on the takings analysis, focusing on whether a government acted "akin to a private citizen" or whether the government's conduct necessitated the use of sovereign powers. *See, e.g., Gulf Coast Waste Disposal Auth.*

*v. Four Seasons Equip., Inc.*, 321 S.W.3d 168, 176 n. 5 (Tex.App.-Houston [1st Dist.] 2010, no pet.) ("Here, the record affirmatively negates jurisdiction because it shows that Gulf Coast was acting 'akin to a private citizen' when it acquired the crane; it was not acting pursuant to its sovereign powers."); *MBP*, 297 S.W.3d at 491 ("[B]ecause a private landowner could have acted as the Wharves did, we conclude MBP has not shown the Wharves' requisite intent to act under its sovereign powers."); *Dall. Cnty. Cmty. Coll. Dist. v. Clear Channel Outdoor, Inc.*, No. 05-07-00701-CV, 2008 WL 3307085, at *3 (Tex.App.-Dallas July 31, 2008, pet. denied) (mem. op.) ("In other words, the District was acting as any private party could, and not a sovereign, in exercising its right under the lease, and its assertion of that right was not a taking.").

Here, the parties have a significant dispute as to ownership of the downtown property. The City asserts ownership by detailing a chain of title arising from 1989 and 1991 abstracted judgments, related foreclosure sales, and its purchase of the property for $972,120 in September 2000 by special warranty deed granted by a third party, Downtown Joint Venture. Pointing to alleged defects in the City's chain of title, CKS claims the City never obtained ownership through valid conveyances. CKS asserts ownership based on execution on a 1995 abstracted judgment and purchase for $50,000 at a December 2000 foreclosure sale.

■ We conclude the City has a "color of right" to the property as evidenced by the certified documents presented in support of its plea to the jurisdiction. The City's claim does not involve circumstances in which (1) it asserted a right to property without any evidence of ownership, (2) it merely claimed statutory ownership, or (3) it asserted a self-interested interpretation of an allegedly ambiguous contract between CKS and the City. Instead, the City presented extensive evidence that it behaved akin to a private party in its purchase of the downtown property from a third party for $972,120, conduct that did not necessitate use of its sovereign powers.

CKS argues that the supreme court's analysis in *Holland* should not apply in instances of real property, citing two cases from Austin in which petitions for review by the supreme court have been filed. *See State v. BP Am. Prod. Co.*, 290 S.W.3d 345 (Tex.App.-Austin 2009, pet. filed); *Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451 (Tex.App.-Austin 2008, pet. filed). In those cases, the court concluded that "absent such a determination [that the State is, in fact, the property owner], the State's intentional act of taking property for public use is an exercise of its eminent domain powers." *BP Am.*, 290 S.W.3d at 364; *Koch*, 273 S.W.3d at 458. We acknowledge the court in these cases has reached a different conclusion from the one we reach today. Yet we are not bound by these cases. *See Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 206 n. 17 (Tex.App.-Austin 2008, no pet.). These cases also are distinguishable—they do not involve a governmental entity purchasing property through a third-party contract for a substantial consideration with a chain of title evidencing the claim of right. *See BP Am.*, 290 S.W.3d at 348–49 (government claiming statutory ownership of once-fast land submerged by river); *Koch*, 273 S.W.3d at 453 (government claiming right to remove limestone through ownership of mineral estate). We cannot conclude, given relevant supreme court authority, that a governmental entity is presumed to have the requisite intent for a takings claim, regardless of whether it has contracted for ownership of the real property in dispute.

Based on the record before this Court, we conclude CKS has not shown the City had the requisite intent to act under its sovereign powers as required for a constitutional takings claim. *See Holland*, 221 S.W.3d at 644 (citing with approval *A.C. Aukerman Co. v. State*, 902 S.W.2d 576, 578–79 (Tex.App.-Houston [1st Dist.] 1995, writ denied) for conclusion that, having acquired disputed property through third-party contract, "the State lacked the intent necessary to establish a takings claim"). CKS has asserted no other claim against the City. Accordingly, the trial court erred when it denied the City's plea to the jurisdiction. In light of this conclusion, we need not address the City's remaining arguments. *See* Tex.R.App. P. 47.1.

## Conclusion

For the reasons stated, we reverse the trial court's order denying the City's plea to the jurisdiction and dismiss CKS's claims against the City.