**Affirmed and Opinion Filed August 26, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-12-00688-CV**

**PRESTON STATE BANK, F/K/A DALLAS CITY BANK, Appellant**
**V.**
**GREG WILLIS, IN HIS OFFICIAL CAPACITY AS COLLIN COUNTY DISTRICT ATTORNEY, COLLIN COUNTY, TEXAS, and THE STATE OF TEXAS, Appellees**

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-01018-2010**

## OPINION

Before Justices Bridges, FitzGerald, and Lang-Miers
Opinion by Justice Bridges

In this appeal, we decide whether a financial institution that complies with a grand jury subpoena seeking an account holder's records suffers an unconstitutional taking of its property by bearing the expense of copying and producing the requested documents. Appellant Preston State Bank, formerly known as Dallas City Bank (Bank) contends that Section 59.006 of the Texas Finance Code, governing discovery of customer records from financial institutions, is unconstitutional because it allowed appellees to take property for public use without providing just or adequate compensation. We conclude that we have jurisdiction over the appeal; there was no unconstitutional taking; and that it was within the trial court's discretion to deny the parties' motions for attorney's fees. We therefore affirm the trial court's judgment.

## BACKGROUND

In October 2009, the Bank was served with a subpoena for production of documents issued by the Grand Jury of Collin County. The subpoena sought production of documents from two of the Bank's account holders. The Bank contacted the Collin County District Attorney's office to inquire about payment of the costs of complying with the subpoena under section 59.006 of the Texas Finance Code. An assistant District Attorney responded that the Bank was not entitled to recover its costs in response to a criminal grand jury subpoena. The Bank and the District Attorney then entered into a written "Rule 11 Agreement," filed with the trial court, that the Bank would produce the documents requested, but its compliance with the subpoena would not act as a waiver of its right to complain that it had not been paid for the costs of the production. In the trial court's later description, the Bank "nobly complied with the grand jury subpoena so as not to delay the prompt and efficient administration of justice and agreed to take its arguments to court to settle." The Bank produced 38,966 pages of records in response to the subpoena.[1]

The Bank filed a motion for protection in the trial court (the court which had issued the subpoena), asking the court to quash the subpoena or order the County to pay the costs of production pursuant to section 59.006 of the Texas Finance Code. This motion was docketed as a miscellaneous proceeding. The Collin County District Attorney[2] was served and responded to the motion. After hearing, the trial court denied the motion. The Bank then filed a motion for declaratory relief and for reconsideration, and obtained service of the motion on the Collin

---

[1] The record includes testimony by a vice-president of the Bank that the cost of compliance with the subpoena was $16,041.50. Although the parties presented arguments in the trial court regarding the court's authority to quash or modify an unreasonable or oppressive subpoena, these arguments are not presented in this appeal. *Cf. In re Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977) (court in exercising its power under Rule 17(a) of Federal Rules of Criminal Procedure may in appropriate circumstances modify subpoena to require that cost of compliance be borne by Government).

[2] At the time, the Collin County District Attorney was John Roach. Greg Willis, the current Collin County District Attorney, was substituted as defendant upon his election and accession to office in 2011.

County District Attorney and the Texas Attorney General. A hearing on the motion was held at which only the Bank appeared. The Bank offered testimony regarding the cost of producing the documents and its attorney's fees. The court took the motion under advisement. Several weeks later, the trial court notified the Bank that the matter should be filed as a new lawsuit before any ruling would be made on the issues presented. The Bank complied, filing this suit in the same trial court.

In its original petition, the Bank sought a declaratory judgment that "if Texas Finance Code § 59.006(a)(3) purports to exempt the government from payment of costs and fees incurred in producing private records in response to a government subpoena, then Texas Finance Code § 59.006(a)(3) is unconstitutional as written or as applied because it allows a taking of private property by the government for public use and without just or adequate compensation having to be made, which is in contravention of the United States Constitution, Amendment V, and the Texas Constitution, Article I, Section 17."

The State of Texas intervened to defend the statute's constitutionality.

The parties filed cross-motions for summary judgment; appellees also filed pleas to the jurisdiction.[3] In an order dated January 23, 2012, the trial court denied the Bank's motion for partial summary judgment and granted appellees' cross-motions. The Bank and the County then moved to recover their attorney's fees. The court denied all motions for attorney's fees and rendered a final judgment on May 16, 2012. This appeal followed.

## ISSUES

In three issues, the Bank complains of the trial court's judgment. First, the Bank contends the trial court erred by refusing to declare section 59.006(a)(3) of the Texas Finance

---

[3] The County's and the District Attorney's pleas to the jurisdiction were made in the alternative to their cross-motions for summary judgment.

Code unconstitutional to the extent it allows a governmental taking without just or adequate compensation. Second, the Bank contends that because the statute is unconstitutional, the trial court erred by failing to allow the Bank to recover either just and adequate compensation for the property taken or its statutory costs under the Finance Code. Third, the Bank argues the trial court erred by refusing to award its attorney's fees, or in the alternative by failing to remand the case for determination of its attorney's fees.

In two cross-points, the County asserts the trial court erred by failing to find that the Bank's claims are barred by res judicata, and by failing to award the County its attorney's fees. In addition, the appellees challenge this court's jurisdiction over the Bank's appeal. We address the jurisdictional issues first before considering the Bank's constitutional challenge and the claims for attorney's fees.

### STANDARDS OF REVIEW

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The reviewing court should render the judgment that the trial court should have rendered. *Id.* We consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for the final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

When reviewing the constitutionality of a statute, we begin with a presumption that it is constitutional. *Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex. 2003); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (West 2013) (in enacting statute, it is presumed that compliance with state and federal constitutions is intended). The party challenging a statute's constitutionality has the burden of proving that the statute fails to meet constitutional requirements. *Walker*, 111 S.W.3d

–4–

at 66. In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied to that party. *Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 777 (Tex. App.—Dallas 2008, pet. denied) (citing *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 n.16 (Tex. 1995)). To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id.* (citing *Garcia*, 893 S.W.2d at 518). To sustain an "as applied" challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Id.*

Whether particular facts are sufficient to allege a constitutional taking is a question of law. *City of Dallas v. Blanton*, 200 S.W.3d 266, 271–72 (Tex. App.—Dallas 2006, no pet.). We review a trial court's legal conclusions de novo. *See, e.g., Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 568 (Tex. App.—Tyler 2007, pet. denied) (determination whether statute violates constitution is question of law reviewed de novo).

We review the trial court's award or denial of attorney's fees under the Declaratory Judgments Act for abuse of discretion. *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sciences, Inc.*, 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.).

**JURISDICTION**

Under section 37.004(a) of the Texas Civil Practice and Remedies Code, "[a] person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2008). The Declaratory Judgments Act waives governmental immunity against claims that a statute or ordinance is invalid. *City of McKinney v. Hank's Rest. Group, L.P.*, 412 S.W.3d 102, 112 (Tex. App.—Dallas 2013, no pet.). The Bank asserts that section 59.006(a)(3) of the Texas Finance Code is invalid because it constitutes a taking of property in

violation of the state and federal Constitutions.  *See* TEX. FIN. CODE ANN. § 59.006 (West Supp. 2013).[4]  We therefore have jurisdiction over the Bank's appeal.

Appellees, however, make numerous arguments challenging our subject matter jurisdiction over this appeal.  The issue of subject matter jurisdiction may be raised for the first time on appeal and may not be waived by the parties.  *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).  "Our initial inquiry is always whether we have jurisdiction over an appeal."  *Garcia v. Comm'rs Court of Cameron Cnty.*, 101 S.W.3d 778, 779 (Tex. App.—Corpus Christi 2003, no pet.) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 443).

We first address the County's and District Attorney's argument that jurisdiction is lacking because the Texas Banking Commissioner, an indispensable party, was not made a party to this suit.[5] They argue that a party with authority to enforce a particular statute must be named in a suit to declare the statute unconstitutional.  *See Gilmer Indep. Sch. Dist. v. Dorfman*, 156 S.W.3d 586, 588 (Tex. App.—Tyler 2003, no pet.).  Failure to add a necessary and indispensable party to the challenge of a statute leaves the trial court without jurisdiction.  *Id.*  The act at issue in this case is the failure to pay the Bank's "reasonable costs of complying" with the grand jury subpoena.  *See* TEX. FIN. CODE ANN. § 59.006(b)(2) (financial institution shall produce record in response to request only if requesting party pays financial institution's reasonable cost of complying with the request).

The District Attorney and the County rely on section 31.101(2) of the Finance Code, under which the banking commissioner's general duties include administration and enforcement of certain statutory provisions including section 59.  *See* TEX. FIN. CODE ANN. § 31.101(2) (West

---

[4] Section 59.006 was amended in 2013, but the text of the provisions in dispute here is unchanged.  *Cf.* Act of May 17, 1999, 76th Leg., ch. 344, § 2.016, 1999 TEX. GEN. LAWS 1290–92 (amended 2001, 2011, and 2013) (current version at TEX. FIN. CODE ANN. § 59.006 (West Supp. 2013)).

[5] We note that the State does not join this argument, and instead contends "it simply would be nonsensical to hold that the Banking Commissioner is the proper defendant in the case," because the records at issue here were sought by the grand jury empaneled by the District Attorney of Collin County, not by the Banking Commissioner.

2013) (banking commissioner shall administer and enforce "this subtitle;" section 31 is included in subtitle A, which also includes section 59). Here, however, the statute on its face "does not apply" to a request from a government agency arising out of the investigation or prosecution of a criminal offense. TEX. FIN. CODE ANN. § 59.006(a)(3). Enforcement of compliance with the government agency's request for documents arising from a criminal investigation or prosecution would be undertaken by the District Attorney, as the County itself argues, citing sections 2.01 and 24.05 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. arts. 2.01 (West 2005 ) (duties of district attorneys); 24.05 (West 2009) (refusal to obey subpoena).[6] The Banking Commissioner is not an indispensable party.[7]

The County also argues that we lack jurisdiction because the Bank's claim "sounds in ultra vires," and the County is immune from such a claim. The County argues "to the extent" that the Bank seeks to compel a government official to perform a ministerial act, only the official is the proper defendant. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). But the Bank's claim is that section 59.006 of the Finance Code is unconstitutional. As we have noted, the Declaratory Judgments Act waives governmental immunity against claims that a statute or ordinance is invalid. *City of McKinney*, 412 S.W.3d at 112.

Appellees also argue that the Bank's claims are moot, because the Bank has already produced the documents requested in the subpoena without payment. Here, the Bank complied with the subpoena; however, it was not compensated for its compliance and expressly reserved its challenge to the constitutionality of the statute. Generally, an appeal is moot when the court's action on the merits cannot affect the rights of the parties. *Trulock v. City of Duncanville*, 277

---

[6] The subpoena itself bears a notice that "under Tex. Code Crim. Proc. Ann. Art. 24.05, refusal to obey this subpoena may result in the imposition of a fine."

[7] For these same reasons, we reject the District Attorney's arguments that because the Banking Commissioner is the proper party to this case, the District Attorney is not. Also for the same reasons, we reject the County's argument that even though the District Attorney was sued in his official capacity as an agent of the County, the County is not a proper party because the District Attorney does not enforce the Finance Code.

S.W.3d 920, 924 (Tex. App.—Dallas 2009, no pet.). A case on appeal is moot if there are no live controversies between the parties and any decision rendered by the appellate court would be an advisory opinion. *Id.*

The Bank's claim for its costs, and its challenge to the statute on which appellees relied in refusing to pay the costs, are live controversies. In addition, the District Attorney expressly agreed that the production of documents by the Bank in accordance with the subpoena "will not act as a waiver of the Bank's right to complain about not being paid for the costs of production."[8] The Bank's claims are not moot. *See also In re Grand Jury Subpoena*, 41 F. Supp. 2d 1026, 1029 (D. Alaska 1999) (compliance with grand jury subpoena did not render moot financial institution's claim that subpoena required it to violate state law).

The County next argues that the Bank's claim is not ripe because it is conditioned upon a finding by the trial court that the statute is unconstitutional. Ripeness is an element of subject matter jurisdiction, and is a legal question subject to de novo review. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Under the ripeness doctrine, we consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote. *Waco Indep. Sch. Dist. v Gibson*, 22 S.W.3d 849, 851 (Tex. 2000). The ripeness analysis focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Id.* A case is not ripe when determining whether a plaintiff has a concrete injury depends on contingent or hypothetical facts. *Id.* The Bank's claimed injury is production of the documents without reimbursement of its costs. The District Attorney has refused to make the requested

---

[8] We note that the rule 11 agreement included in the record recites that the "Collin County District Attorney's Office" is a party to the agreement, and the agreement is signed by an Assistant District Attorney "for Collin County District Attorney John Roach." We reject the County's and the District Attorney's arguments that this agreement is not binding on them. *See* TEX. R. CIV. P. 11.

reimbursement. These events have occurred. There is no hypothetical question presented. The Bank's claim is ripe.

Last, inconsistent with its ripeness argument, the County contends that we lack jurisdiction because the Bank's claim is for an injury that has already occurred "and the only plausible remedy is an award of money damages for which the County's immunity has not been waived." As we have noted, however, the Bank seeks a declaration that section 59.006 of the Finance Code is unconstitutional. The Declaratory Judgments Act waives governmental immunity against such a claim. *City of McKinney*, 412 S.W.3d at 112. And as the Texas Supreme Court has recognized, "[t]he Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging, or destruction of property for public use." *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980). Sovereign immunity does not shield the State from an action for compensation under the takings clause of the Texas Constitution. *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 598 (Tex. 2001) (citing *Steele*, 603 S.W.2d at 791); *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007)).

The State contends we have no jurisdiction because the Bank has failed to plead a colorable claim. The State cites *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012), for the proposition that "[i]n the absence of a properly pled takings claim, the state retains immunity." As we have already noted, however, the Declaratory Judgments Act waives governmental immunity against claims, such as the Bank's here, that a statute or ordinance is invalid. *City of McKinney*, 412 S.W.3d at 112.

We reject appellees' arguments that we lack jurisdiction over the Bank's appeal.

## RES JUDICATA

In its first cross-issue, the County argues that the trial court's ruling in the miscellaneous proceeding bars this action. We disagree. There was no final judgment in the miscellaneous proceeding. The trial court did not rule on the constitutionality of the statute in the miscellaneous proceeding. The trial court denied the Bank's motion for protective order, and did not rule on the Bank's challenge to the constitutionality of the statute. Instead, the trial court instructed the Bank to file an independent lawsuit to resolve this question.

For res judicata to apply, there must be (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Citizens Ins. Co. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). When there has not been a conventional trial on the merits, an order or judgment must actually dispose of every pending claim and party or clearly and unequivocally state that it finally disposes of all claims and all parties. *Lehmann v. Har-Hon Corp.*, 39 S.W.3d 191, 205 (Tex. 2001). Here, the first requirement, of a prior final judgment on the merits, has not been met. Res judicata does not bar the Bank's claims in this suit. We overrule the County's first cross-issue.

## CONSTITUTIONAL CHALLENGE

The Bank contends that section 59.006 of the Texas Finance Code violates article 1, section 17 of the Texas Constitution. Article 1, section 17 provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. 1, § 17. To establish a takings claim, the Bank must prove (1) the State intentionally performed certain acts, (2) that resulted in a "taking" of property; (3) for public use. *Gen. Servs. Comm'n*, 39 S.W.3d at 598.

–10–

Whether particular facts are sufficient to constitute a taking is a question of law. *City of Dallas v. CKS Asset Mgmt., Inc.*, 345 S.W.3d 199, 201 (Tex. App.—Dallas 2011, pet. denied).

The Bank also contends that section 59.006 of the Texas Finance Code violates the Takings Clause of the Fifth Amendment to the United States Constitution, which is made applicable to the states through the Fourteenth Amendment. *See Mayhew*, 964 S.W.2d at 933. Although the Texas takings provision is worded differently from the federal clause, it has been described as "comparable." *Rowlett/2000, Ltd. v. City of Rowlett*, 231 S.W.3d 587, 590–91 (Tex. App.—Dallas 2007, no pet.) (citing *Sheffield Dev. Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex. 2004)). As a result, Texas courts typically look to federal cases for guidance on the constitutionality of a taking. *Id.*

Section 59.006 provides in relevant part:

> (a) This section provides the exclusive method for compelled discovery of a record of a financial institution relating to one or more customers but does not create a right of privacy in a record. This section does not apply to and does not require or authorize a financial institution to give notice of: . . .
>
> > (3) a record request from or report to a government agency arising out of:
> >
> > > (A) the investigation or prosecution of a criminal offense . . .
>
> (b) A financial institution shall produce a record in response to a record request only if: . . .
>
> > (2) before the financial institution complies with the record request the requesting party pays the financial institution's reasonable costs of complying with the record request, including costs of reproduction, postage, research, delivery, and attorney's fees, or posts a cost bond in an amount estimated by the financial institution to cover those costs . . . .

TEX. FIN. CODE ANN. § 59.006. The section provides the "exclusive method" by which to obtain discovery of records from a bank. Before a bank is required to produce records, the requesting

–11–

party must pay the bank's reasonable costs in complying with the request. But the section, by its explicit terms, does not apply to "a record request from . . . a government agency arising out of . . . the investigation or prosecution of a criminal offense." Appellees argue that a subpoena from a grand jury constitutes a record request from a government agency, so that subsection (b)'s requirement of payment does not apply, and the Bank must produce documents without payment of costs.

By their plain terms, the takings provisions of the state and federal constitutions do not limit the government's power to take private property for public use but instead require that a taking be compensated. *Sheffield Dev. Co., Inc.*, 140 S.W.3d at 669. The Bank concedes the government may subpoena records. The Bank also concedes that it has a duty to comply with the subpoena. The point of contention between the Bank and appellees is whether a party must fulfill that duty without compensation. The United States Supreme Court has concluded that it must. In *Hurtado v. United States*, 410 U.S. 578, 588–89 (1973), the Court explained, "the Fifth Amendment does not require that the Government pay for the performance of a public duty it is already owed."

At issue in *Hurtado* was the fee paid to material witnesses who were incarcerated because they were unable to give bail while awaiting the federal criminal trials at which they were to testify. *Id.* at 579. Among other challenges to the federal statute setting forth the fees to be paid to material witnesses, the petitioners argued that "when the Government incarcerates material witnesses, it has 'taken' their property, and that one dollar a day is not just compensation for this 'taking' under the Fifth Amendment." *Id.* at 588. The Court rejected this argument, explaining that "[i]t is beyond dispute that there is in fact a public obligation to provide evidence, and that this obligation persists *no matter how financially burdensome it may be*." *Id.* at 589 (citations omitted) (emphasis added). The Court stated, "[t]he detention of a material witness, in short, is

simply not a 'taking' under the Fifth Amendment, and the level of his compensation, therefore, does not, as such, present a constitutional question." *Id.* Quoting *Blair v. United States*, 250 U.S. 273, 281 (1919), the Court explained, "'(I)t is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the Government is bound to perform upon being properly summoned, *and for the performance of which he is entitled to no further compensation than that which the statutes provide.*'" *Id.* (emphasis added). The Court concluded, "'[t]he personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public.'" *Id.* (quoting *Blair*, 250 U.S. at 281).[9]

The Court did not "pass upon the wisdom or ultimate fairness of the compensation Congress has provided for the pretrial detention of material witnesses," explaining that "no matter how unwise or unsatisfactory the present rates might be, the Constitution provides no license to impose the levels of compensation we might think fair and just." *Id.* at 591. The Court concluded, "[t]hat task belongs to Congress, not to us." *Id.*

After *Hurtado*, federal courts of appeals applied its reasoning to cases involving the cost of bank's compliance with a subpoena duces tecum. *See, e.g., In re Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977) ("*Hurtado's* lesson in the instant case is that it rejects any assertion that a potential witness has some sort of 'right' to be reimbursed for his expenses in testifying. The same must be true for the production of documents."). The Bank distinguishes these cases, pointing out that they arose before the 1978 enactment of a federal statute requiring reimbursement to banks that incurred expense in

---

[9] In a footnote, the Court articulated its view of this duty even more forcefully: "'(I)t may be a sacrifice of time and labor, and thus of ease, of profits, of livelihood. This contribution is not to be regarded as a gratuity, or a courtesy, or an ill-required favor. It is a duty not to be grudged or evaded. Whoever is impelled to evade or to resent it should retire from the society of organized and civilized communities, and become a hermit. He who will live by society must let society live by him, when it requires to.'" *Hurtado*, 410 U.S. at 589 n.10 (quoting 8 J. Wigmore EVIDENCE § 2192, p. 72 (J. McNaughton rev. 1961)).

complying with a request for financial records "made by a Government authority." 12 U.S.C. § 3411 (2014) (duty of financial institutions to comply with government request for financial records); 12 U.S.C. § 3415 (2014) (providing in relevant part that "a Government authority shall pay to the financial institution assembling or providing financial records pertaining to a customer . . . a fee for reimbursement for such costs as are reasonably necessary and which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or other data required or requested to be produced"). But the fact that Congress has provided for compensation does not alter the constitutional analysis. Whether or not the legislature has chosen to provide reimbursement, there is no constitutional taking. *Hurtado*, 410 U.S. at 589.

In a memorandum ruling on the parties' motions, the trial court stated, "[t]he Court does believe this is a 'taking'—but does not find it to be an unreasonable taking." The Bank argues the trial court correctly ruled that a taking had occurred and should have concluded that the Bank must receive compensation for the taking. The Bank also argues that there is no authority to support the proposition that only "unreasonable" takings qualify for just or adequate compensation under the Constitution. Instead, the Bank points out that a "taking" may occur for any reason in a proper exercise of the government's police power. But when there is any taking, the Bank argues, whether reasonable or unreasonable, the government must pay compensation. *See Satterfield v. Crown Cork & Seal, Inc.*, 268 S.W.3d 190, 215 (Tex. App.—Austin 2008, no pet.) (legislature in exercising its police power cannot by its mere fiat make reasonable that which is indisputably unreasonable or unconstitutional). Under *Hurtado*, however, there is no taking. *Hurtado*, 410 U.S. at 589. No compensation is required by either the state or the federal Constitution. Although the trial court erred by concluding that a "taking" occurred, that error did not cause the rendition of an improper judgment, because the judgment did not require any compensation for the alleged "taking." *See* TEX. R. APP. P. 44.1(a) (no judgment may be

–14–

reversed on appeal for error of law by trial court unless error probably caused rendition of improper judgment). We overrule the Bank's first and second issues.

## ATTORNEY'S FEES

In its second cross-issue, the County complains that the trial court failed to award its attorney's fees. The Bank also complains, in its third issue, of the trial court's failure to award attorney's fees to it. The Declaratory Judgments Act does not require an award of attorney's fees to the prevailing party, or to any party. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008) (in declaratory judgment actions, court may award costs and reasonable and necessary attorney's fees as are equitable and just). The statute "thus affords the trial court a measure of discretion in deciding whether to award attorney fees or not." *Bocquet*, 972 S.W.2d at 20. The Act "imposes four limitations on the court's discretion." *Id.* at 21. Any fees awarded must be reasonable, necessary, equitable, and just. *Id.* The first two limitations are questions of fact; the additional requirements are questions of law. *Id.* A court may conclude that it is not equitable or just to award even reasonable and necessary fees. *See id.; see also SAVA gumarska in kemijska industria d.d.*, 128 S.W.3d at 324 (in exercise of its discretion, trial court may decline to award attorneys' fees to either party).

The Bank's and the County's motions for attorney's fees were thoroughly briefed and argued in the trial court. The County alone filed five separate pleadings in support of its own motion or in contravention to the Bank's. The thrust of the County's arguments was that it was not a proper party to the action, and therefore should not have been required to expend any attorney's fees in contravention of the Bank's request for declaratory relief. These arguments were premised on the County's contention that the Banking Commissioner, rather than the District Attorney, was the proper party to enforce the statutory provision at issue. The Bank, in turn, argued that its attorney's fees should be awarded because it raised an important and non-

frivolous constitutional challenge to a statute, and it prevailed in part by the trial court's conclusion that there had been a taking, although not an unreasonable one. Each party, as well as the District Attorney and the State, presented arguments counter to those advanced by the County and the Bank, including the arguments regarding immunity and mootness that we have already addressed. The appellees also argued that the amount of fees sought by the Bank were not reasonable and necessary, because the amount sought exceeded both the amount expended by the Bank in responding to the subpoena and the amount sought by the County in the same action. We conclude that it was within the trial court's discretion to deny both the Bank's and the County's motions for attorney's fees under the Declaratory Judgments Act. We overrule the Bank's third issue and the County's second cross-issue.

## CONCLUSION

We have jurisdiction over the Bank's appeal of the trial court's judgment. Because no taking occurred, we overrule the Bank's claim that section 59.006 of the Finance Code (exempting investigation or prosecution of criminal offenses from its requirement of prior payment to a bank for production of records) is unconstitutional. We also conclude the trial court did not err by denying the recovery of attorney's fees to either the Bank or the County. We affirm the trial court's judgment.

120688F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

–16–



# Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

PRESTON STATE BANK, F/K/A
DALLAS CITY BANK, Appellant

No. 05-12-00688-CV     V.

GREG WILLIS, IN HIS OFFICIAL
CAPACITY AS COLLIN COUNTY
DISTRICT ATTORNEY, COLLIN
COUNTY, TEXAS, and THE STATE OF
TEXAS, Appellees

On Appeal from the 417th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 417-01018-2010.
Opinion delivered by Justice Bridges,
Justices FitzGerald and Lang-Miers
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered August 26, 2014