**Opinion issued August 12, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-23-00600-CV**

————————————

## IN THE ESTATE OF SUZANNE JOYCE RYTHER, Deceased

---

**On Appeal from Probate Court No. 1**
**Harris County, Texas**
**Trial Court Case No. 490,834**

---

## MEMORANDUM OPINION

Appellant, H. William Osterhout ("William"), challenges the trial court's final judgment, entered after a jury trial and a bench trial on attorney's fees, which admitted the last will and testament of Suzanne Joyce Ryther, deceased (the "decedent"), to probate and declined to award William attorney's fees. In his sole issue, William contends that the trial court erred in not awarding him attorney's fees.

We affirm.

## Background

Appellee, Eric A. Osterhout ("Eric"), filed an application to probate the July 13, 2017 will of the decedent, his mother. Eric alleged that the decedent passed away on December 21, 2020 at eighty-eight years old in Harris County, Texas. The decedent's husband had preceded her in death. The decedent had three biological children, Eric, William, and appellee, Jeffrey Osterhout ("Jeffrey"), and two stepchildren, Fenley Ryther, III ("Fenley") and Carol Ann Johnson ("Carol Ann").

Eric attached a copy of the decedent's July 13, 2017 will to his application. The will stated that the decedent "intend[ed] to give the entirety of [her] estate" to: Eric, Jeffrey, Fenley, and Carol Ann. It also stated that the decedent "intend[ed] to make no provisions in th[e] [w]ill for [William], and he [was] familiar with the reasons." (Emphasis omitted.) Thus, "all references" in the decedent's will to her "beneficiaries" were to Eric, Jeffrey, Fenley, and Carol Ann and did not include William. (Internal quotations omitted.) The will was signed by the decedent and two witnesses.

William filed a petition contesting Eric's application to probate the decedent's July 13, 2017 will. In his second amended petition, William alleged that the July 31, 2017 will did not "reflect [the] [d]ecedent's true testamentary intent," the decedent's "non-probate designations and/or other purported changes to [her] bank

2

or financial accounts . . . d[id] not reflect [the] [d]ecedent's true contractual intent," the July 13, 2017 will and "other non-probate transfers and/or designations [were] the result of" Eric and Jeffrey's "exertion of undue influence on [the] [d]ecedent during a time when [her] cognitive abilities and physical condition were significantly diminished," and the decedent "lacked the requisite testamentary and/or contractual capacity to make changes to her probate and non-probate estates."

According to William, the decedent's estate was worth $1,500,000, including "over $400,000" in an individual retirement account ("IRA"). However, he believed that the decedent's "cognitive abilities had been significantly impaired at the time of the execution" of her July 13, 2017 will and her 2017 IRA beneficiary designation. William alleged that he "first noticed [the decedent's] confusion and forgetfulness in 2016."

In William's opinion, the decedent "would have never cut [him] out of her estate," and Eric and Jeffrey "were involved in the making of" the July 13, 2017 will. William also asserted that the decedent's IRA designation, executed on May 14, 2017, was unduly influenced by Eric and Jeffrey so that William would be excluded as a beneficiary. According to William, he had received nothing from the decedent's estate.

William requested declaratory relief, seeking declarations that the decedent's July 13, 2017 will and non-probate designations were invalid. Specifically, William requested declarations that:

1. The decedent "did not have sufficient mental ability to understand the business of making a [w]ill, the effect of her act in so making a [w]ill, and the general nature and extent of her property";

2. The decedent "did not have the mental capacity to know the object of her bounty, her next of kin, or their claims upon her. She did not have sufficient memory to collect in her mind the elements of the business to be transacted and to hold them long enough to perceive, at least, their obvious relation to each other and to be able to form a reasonable judgment as to them";

3. The decedent "lacked the testamentary capacity required by law to make a valid" will.

4. "At the time of the execution of the [July 13, 2017 will], [the] [d]ecedent was ill. Her cognitive abilities were diminished, and she was dominated by Jeff[rey] and/or Eric in many of her activities and decisions";

5. "At the time of the execution of the alleged non-probate designation(s) and/or contracts after January 2017, [the] [d]ecedent was ill. Her cognitive abilities were diminished, and she was dominated by Jeff[rey] and/or Eric in many of her activities and decisions."

6. The decedent "was unduly influenced to execute or sign the [July 13, 2017 will] and/or non-probate designation(s)/contract(s) after January 2017 by Jeff[rey] and/or Eric's compulsion, arguments, and/or deception. Jeff[rey] and/or Eric, allowing his mind to substitute for [the] [d]ecedent's own, made the [July 13, 2017 will] and/or non-probate designation(s)/contract(s) without the [d]ecedent assenting to them or their terms";

4

7. "[T]he beneficiary designation(s), specifically the T. Rowe Price IRA designation form, and/or other transfers in [the] [d]ecedent's non-probate financial accounts and/or assets were and are invalid due to [the] [d]ecedent's lack of contractual capacity";

8. "There exists a constructive trust around all monies, funds or other assets stemming from [the] [d]ecedent's non-probate financial accounts and/or her other real property";

9. The decedent's "non-probate monies, real property and assets be distributed in accordance with the laws of the [S]tate of Texas"; and

10. The July 13, 2017 will was "invalid and ineffective."

William requested attorney's fees under the Texas Uniform Declaratory Judgments Act (the "DJA")[1] and the Texas Estates Code.[2]

A jury trial began on October 3, 2022 on Eric's application to probate the decedent's July 13, 2017 will and William's will contest.[3] Before the jury trial began, the parties agreed, related to the issue of attorney's fees, that "the question of

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.").

[2] *See* TEX. EST. CODE ANN. § 352.052(c) ("An interested person who, in good faith and with just cause, successfully prosecutes a proceeding to contest the validity of a will or alleged will offered for or admitted to probate may be allowed out of the estate the person's necessary expenses and disbursements in that proceeding, including reasonable attorney's fees."). On appeal, William does not assert that he was entitled to attorney's fees under the Texas Estates Code.

[3] William did not provide this Court with a reporter's record from the jury trial. The jury trial ended on October 12, 2022. We note that Eric and Jeffrey, in their briefing, raise the issue of a partial reporter's record and its effect on William's appeal, but due to our disposition below, we need not address this issue. *See* TEX. R. APP. P. 47.1; *see also* TEX. R. APP. P. 34.6(c).

'good faith' and 'just cause' . . . for purposes of Tex[as] Estates Code [section] 352.052" would be submitted to the jury, but "the amount of attorney['s] fees, court costs and expert witness fees and expenses pursuant to Tex[as] Estates Code [section] 352.052(a), (b) and (c) and pursuant to Tex[as] Civ[il] Prac[tice] [and] Rem[edies] Code [section] 37.009" would be submitted to the trial court "[a]fter the [j]ury [v]erdict by affidavit, evidence [and/or] testimony." Further, the parties agreed to "waive the requirement to prove attorneys [sic], costs and expenses, including expert witness fees in the jury trial" and to tender "all such amounts . . . to the [trial] court after [the] jury verdict for the court's consideration."

The jury found that the decedent's July 13, 2017 will met the requirements of the Texas Estates Code, the decedent had testamentary capacity to sign the will, and the decedent did not sign the July 13, 2017 "as the result of undue influence" by Eric or Jeffrey. However, the jury also found that the decedent lacked contractual capacity "to sign the T. Rowe Price IRA [b]eneficiary designation dated May 14, 2017" and the decedent "sign[ed] the T. Rowe Price IRA [b]eneficiary designation . . . as a result of undue influence by Eric."[4] Finally, the jury found that Eric and Jeffrey acted in "good faith and with just cause" in "prosecuting th[e] suit for purposes of having the July [13,] 2017 [w]ill admitted to probate" and William

---

[4] The jury did not find that the decedent "sign[ed] the T. Rowe Price IRA [b]eneficiary designation . . . as a result of undue influence by Jeffrey."

acted in "good faith and with just cause" in "prosecut[ing] th[e] suit to contest the validity of the July [13,] 2017 [w]ill."

Following the jury's verdict, on November 9, 2022, William's attorney filed an affidavit, stating that $177,235.12 constituted his reasonable and necessary attorney's fees in the case, and he requested that the trial court award William that amount of attorney's fees under the DJA.[5]  Attached to William's attorney's affidavit was a "contingent fee engagement agreement" between William and his attorney as well as "pages of slightly redacted itemized time records, invoices and expenses . . . regarding to work performed in th[e] matter" by William's attorney. Eric filed an objection to William's attorney's affidavit, asserting that William was not entitled to attorney's fees.

William then filed a motion for entry of judgment on attorney's fees, requesting reasonable and necessary attorney's fees under the DJA in the amount of $177,235.12.  According to William, he was entitled to attorney's fees because he "won his claim invalidating the IRA designation based on [a] lack of contractual capacity and undue influence" by Eric, though he acknowledged that he did not prevail on his will contest.  William then filed a supplemental motion for entry of judgment, requesting that the trial court award him attorney's fees under the DJA in the amount of $179,311.12.  William attached to his supplemental motion the

---

[5]        *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

7

unsworn declaration of his attorney as well as "slightly redacted itemized time records, invoices and/or expenses . . . regarding the work performed" by William's attorney in the case.

The trial court held a non-evidentiary hearing addressing William's request for attorney's fees under the DJA. At the hearing, William requested that the trial court award him attorney's fees against Eric.

The trial court signed its final judgment on July 14, 2023, finding, consistent with the jury's verdict, that the decedent's July 13, 2017 will met the requirements of the Texas Estates Code, the decedent had testamentary capacity to sign the July 13, 2017 will, and the decedent did not sign the July 13, 2017 will as the result of the undue influence of Eric and Jeffrey. The trial court also found that the decedent lacked contractual capacity to sign "the T. Rowe Price IRA beneficiary designation dated May 14, 2017" and the decedent signed "the T. Rowe Prince IRA beneficiary designation dated May 14, 2017 as a result of [the] undue influence of Eric." Further, the trial court found that Eric and Jeffrey acted in "good faith and with just cause" in prosecuting the suit "for the purpose of having the July [13,] 2017 [w]ill admitted to probate" and William acted in "good faith and with just cause" in prosecuting his suit "to contest the validity of the July [13,] 2017 [w]ill." Thus, the trial court admitted the decedent's July 13, 2017 will to probate but found that the decedent's "T. Rowe Price IRA beneficiary designation" was invalid.

8

As to William's request for attorney's fees, the trial court stated that William had sought attorney's fees under the DJA[6] and the Texas Estates Code in his pleadings,[7] but it awarded him $0.00 in attorney's fees.

Specifically, the trial court explained that because William was not successful in contesting the validity of the decedent's July 13, 2017 will, the trial court determined that he was not entitled to recover attorney's fees under the Texas Estates Code. As to William's request for attorney's fees under the DJA, the trial court found that "a party c[ould not] use the [DJA] as a vehicle to obtain otherwise impermissible attorney's fees" and William had "ma[de] several claims contesting the validity of [the decedent's July 13, 2017] will using the [DJA]." (Internal quotations omitted.) William was not entitled to attorney's fees under the Texas Estates Code because he did not successfully prosecute his contest to the validity of the decedent's will; and accordingly, he was not entitled to attorney's fees under the DJA either.

The trial court also found that William had sought "a declaratory judgment for [a] constructive trust," but "[c]onstructive [t]rusts [were] equitable remedies" that were imposed "to prevent unjust enrichment" and "[n]o statute authorize[d] attorney's fees for claims, whether successful or not, for the equitable remedy of a

---

[6] *See id.*

[7] *See* TEX. EST. CODE ANN. § 352.052.

constructive trust." Accordingly, the trial court concluded that William was not entitled to attorney's fees under the DJA related to his requested declaration for a constructive trust.

Further, the trial court found that William did not produce his attorney's fees invoices until "nearly three months after the [parties'] discovery deadline, and almost a month after the jury trial." William also did not provide "good cause for the late production[,] and the late production constitute[d] unfair surprise." Thus, under Texas Rule of Civil Procedure 193.6(a), the trial court excluded William's attorney's fee evidence, and it concluded that because "no evidence was admitted supporting [William's] claim for attorney's fees," it had "no evidence upon which to evaluate the reasonableness or necessity of attorney's fees," as required by the DJA.

Finally, the trial court noted that William had requested in his pleadings declarations that the decedent was incapacitated and "dominated" by Eric and Jeffrey related to her "non-probate designation(s) and/or contracts after January 2017"; the decedent was "unduly influenced to execute or sign the [July 13, 2017 will] and/or non-probate designation(s)/contract(s) after January 2017" by Eric and Jeffrey; and the beneficiary designation in the "T. Rowe Price IRA designation form, and/or other transfers in [the] decedent's non-probate financial accounts and/or assets were . . . invalid due to [the] [d]ecedent's lack of contractual capacity."

However, the trial court explained that the jury had "found only that the decedent lacked contractual capacity to sign the T. Rowe Price beneficiary designation and that [only] Eric . . . unduly influenced the decedent to sign [that] . . . beneficiary designation." Thus, William did not succeed on his other claims, and because the DJA did not require an award of attorney's fees, the trial court considered "[t]he degree of success obtained" by William, finding that "it would not be equitable or just to award to attorney's fees for the two [declaratory-judgment] claims upon which he succeeded."

## Standard of Review

Generally, attorney's fees are not recoverable in Texas unless allowed by contract or statute. *Dall. Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 705 (Tex. App.—Houston [1st Dist.] 2007, no pet.). The DJA provides that a trial court "may" award reasonable and necessary attorney's fees when doing so is "equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *see also City of Pasadena v. Gennedy*, 125 S.W.3d 687, 701 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). We review a denial of attorney's fees under the DJA for an abuse of discretion. *See Forest Hills Improvement Ass'n v. Flaim*, No. 09-18-00199-CV, 2019 WL 4493325, at *2 (Tex. App.—Beaumont Sep. 19, 2019, no pet.) (mem. op.); *Preston State Bank v. Willis*, 443 S.W.3d 428, 434 (Tex. App.—Dallas 2014, pet.

denied). The trial court has broad discretion in determining whether to award fees in a declaratory-judgment action, and we will not reverse a trial court's decision absent a clear showing of an abuse of discretion. *See Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985).

## Attorney's Fees

In a portion of his sole issue, William argues that the trial court erred in awarding him $0.00 in attorney's fees because the trial court should have found that awarding him attorney's fees under the DJA was equitable and just.

In his second amended petition contesting Eric's application to probate the July 13, 2017 will of the decedent, William sought ten declarations concerning the validity of the will and the decedent's beneficiary designations for non-probate assets. He requested attorney's fees under the DJA and the Texas Estates Code.

In its judgment, the trial court found that William was not entitled to attorney's fees under the Texas Estates Code because he was not successful in contesting the validity of the decedent's July 13, 2017 will. William does not challenge this ruling on appeal.

As to attorney's fees under the DJA, the trial court found that six and a half of William's ten requested declarations[8] contested the validity of the decedent's July

---

[8] These are declaration numbers 1, 2, 3, 4, portions of 6, 8, and 9, as listed in the background section of this memorandum opinion.

12

13, 2017 will. Because the DJA could not be used "as a vehicle to obtain otherwise impermissible attorney's fees" and William was not entitled to attorney's fees related to his will contest, the trial court found that William could not use the DJA to obtain attorney's fees as to the above-referenced declarations. William does not challenge this ruling on appeal.

The trial court also found that one of William's requested declarations[9] sought "a declaratory judgment for [a] constructive trust," and no statute authorized attorney's fees for such a claim. Thus, William could not obtain attorney's fees under the DJA related to that declaration. William does not challenge this ruling on appeal.

Finally, the trial court found related to the remaining requested declarations, i.e., that the decedent was incapacitated and "dominated" by Eric and Jeffrey related to her "non-probate designation(s) and/or contracts after January 2017"; the decedent was "unduly influenced to execute or sign the [July 13, 2017 will] and/or non-probate designation(s)/contract(s) after January 2017" by Eric and Jeffrey; and the beneficiary designation in the "T. Rowe Price IRA designation form, and/or other transfers in [the] [d]ecedent's non-probate financial accounts and/or assets

---

[9]     This is declaration number 8, as listed in the background section.

were . . . invalid due to [the] [d]ecedent's lack of contractual capacity,"[10] that the jury had only found that the decedent lacked contractual capacity to sign the "T. Rowe Price beneficiary designation" and that only Eric had unduly influenced the decedent. William was not successful on his claim that Jeffrey had unduly influenced the decedent. The trial court then explained that it was not required to award attorney's fees under the DJA to a prevailing party, and William had prevailed on only "two of his multifarious declaratory[-]judgment claims." He had "failed to prove his case of incapacity and undue influence with regard to the [decedent's] will and any other non-probate asset or transfer." He had also failed to prove his case against Jeffrey. Thus, the trial court found that "it would not be equitable or just to award attorney's fees for the two [declaratory-judgment] claims upon which [William] succeeded." This is the portion of the trial court's ruling that William appears to challenge on appeal.[11]

The DJA provides that the trial court "may" award reasonable and necessary attorney's fees that are "equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). Because the DJA

---

[10]  These are declaration numbers 5, a portion of 6, and 7, as listed in the background section.

[11]  We note that William also asserts on appeal that the trial court erroneously found that there was "no evidence upon which to evaluate the reasonableness or necessity of attorney's fees," as required to award fees under the DJA, but due to our disposition, we need not address this portion of William's sole issue. *See* TEX. R. APP. P. 47.1.

14

employs the word "may" in the statute, the trial court is afforded broad discretion in deciding whether to award attorney's fees or not. *Bocquet*, 972 S.W.2d at 20; *see also Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("[T]he [DJA's] attorney's fees provision grants the trial court broad discretion to (i) afford all parties the opportunity to request fees; (ii) decline to award fees; and (iii) allow an award only when reasonable, necessary, equitable, and just."). A trial court may decide that fees should not be awarded if such an award would not be equitable and just in light of all the circumstances. *See Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004); *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 494 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("[A] court may conclude that it is not equitable or just to award even reasonable and necessary fees."). To have abused its discretion, the trial court must have ruled arbitrarily, unreasonably, or without reference to any guiding principles. *Bocquet*, 972 S.W.2d at 21.

On appeal, William has the burden of establishing that the trial court abused its discretion in failing to award him attorney's fees under the DJA. *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 526 (Tex. App.—Dallas 2010, no pet.). In its judgment, the trial court explained that the DJA did not require it to award attorney's fees to a prevailing party and it considered William's degree of success in total when making its decision. *See, e.g.*, *Flaim*, 2019 WL 4493325, at

15

*3 (in holding trial court did not err in denying appellant's request for attorney's fees, noting trial court considered "that recovery of attorney's fees pursuant to [the DJA was] not mandatory"). William asserts that not awarding him attorney's fees allows Eric "to get away with his nefarious conduct." But the trial court did invalidate the "T. Rowe Price IRA beneficiary designation," which was the only thing that the jury found was the "result of undue influence by Eric."

Notably, William has not explained what applicable guiding rules or principles the trial court allegedly disregarded in denying his request for attorney's fees. Instead, William, in his briefing, has essentially only asserted that it would be equitable and just to award him attorney's fees. *Cf. Evans v. Livingston*, No. 09-23-00123-CV, 2025 WL 1255678, at *9 (Tex. App.—Beaumont May 1, 2025, no pet.) (mem. op.). While the DJA permits a trial court to award attorney's fees, it certainly does not require it to do so. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *Bocquet*, 972 S.W.2d at 20. Absent a showing of an abuse of discretion, the trial court's decision will stand. *See Guajardo v. Hitt*, 562 S.W.3d 768, 782–83 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (appellants not entitled to attorney's fees merely because they prevailed on declaratory-judgment action and there was no indication in record that trial court's decision to deny attorney's fees was arbitrary or unreasonable).

Accordingly, we hold that the trial court did not err in finding that it would not be equitable and just to award William attorney's fees under the DJA; and, thus, the trial court did not err in declining to award William attorney's fees.

We overrule this portion of William's sole issue.[12]

## Conclusion

We affirm the judgment of the trial court.

Kristin Guiney
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[12] In their briefing, Eric and Jeffrey raise a standing issue related to William. Although we question whether their complaint is really a capacity complaint, instead of a standing complaint, due to our disposition, we need not address the issue. *See id.*; *see also Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848–49 (Tex. 2005) (addressing difference between standing and capacity).